**AID INSURANCE COMPANY (MUTUAL), Appellee,**

v.

**UNITED FIRE & CASUALTY COMPANY, Appellant.**

**Jerilyn DANIELSON, et al., Plaintiffs,**

v.

**Norland E. WOODARD, Appellee,**

**and**

**Gatewood Motors, Inc., Appellant.**

No. 88–1385.

Supreme Court of Iowa.

Sept. 20, 1989.

David F. McGuire, Cedar Rapids, for appellants United Fire & Cas. Co. and Gatewood Motors, Inc.

Stephen J. Powell and Samuel C. Anderson of Swisher & Cohrt, Waterloo, for appellees Aid Ins. Co. and Norland E. Woodard.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and ANDREASEN, JJ.

NEUMAN, Justice.

This is an appeal by United Fire & Casualty Company (United) from adverse judgments entered in consolidated actions for contribution and indemnity arising out of an automobile collision. We affirm.

I. The facts giving rise to this controversy are undisputed. In June 1983, Norland E. Woodard test drove a car owned by Gatewood Motors, Inc., a car dealership. While on the test-drive, Woodard struck and injured a child named Eric Danielson. Danielson's parents sued Woodard and Gatewood Motors and eventually recovered a judgment against them, jointly and severally, in the sum of $21,415.20 plus costs.

At the time of the accident, Woodard carried a $25,000 personal automobile insurance policy with Aid Insurance Company (AID). The policy provided, in pertinent part:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, *any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.*

(Emphasis added.) At the same time, Gatewood Motors was insured by United. The United liability policy provided that anyone driving one of Gatewood Motors' autos with its permission was covered as an insured *except* Gatewood Motors' customers *unless* the customer

> [h]as no other available insurance (whether primary, excess or contingent) [in which case] he or she is an insured but only up to the compulsory or financial responsibility law limits....

AID defended Woodard in the Danielson action. United defended Gatewood Motors, but refused to participate in Woodard's defense because of its belief that Woodard was not an insured under Gatewood's policy.

Approximately one month following the Danielson verdict, AID satisfied the judgment in full. It then commenced an action for equitable contribution against United on the theory that Woodard was an insured under Gatewood's policy and thus United had a duty to defend him and pay its proportional share of the judgment and defense costs. The trial court consolidated this contribution action with United's remaining cross-claim against Woodard for indemnity in the Danielson lawsuit.

The district court determined that where, as here, concurrent policies of insurance each provide coverage only to the extent that other insurance is not available, the resulting inequity to the insured is best resolved by prorating the liability between the insurers in proportion to the maximum amount of coverage provided in their respective policies. In so holding, the court relied on our decision in *Union Insurance Company (Mutual) v. Iowa Hardware Mutual Insurance Company*, 175 N.W.2d 413, 418–19 (Iowa 1970).

On appeal, United claims that *Union* is distinguishable from the present case because of minor differences in the policy language under examination. United also disputes the trial court's conclusion that Woodard's status as an insured under the Gatewood policy prevents United from recovering against him on a theory of subrogation.

II. In the *Union* case, we noted a trend among insurance companies toward enlarging coverage to include other persons in addition to the primary insured. *Union*, 175 N.W.2d at 415. This trend has spawned a corollary tendency among insurers to circumvent their expansive coverage by the use of "other insurance" clauses. The objective of "other insurance" clauses is to limit or eliminate an insurer's liability in the event that an insured has other insurance. *Id.*

These "other insurance clauses" generally fall into three categories: (1) *pro rata clauses* that apportion concurring insurers' liability where there is overlapping coverage; (2) *excess clauses* that limit an insurer's liability for any part of the loss or damage which is covered by other insurance, and retain liability only for the amount of loss or damage in excess of the coverage provided by the other insurance; and (3) *escape or no liability clauses* that deny all coverage in the event the insured has other insurance coverage. *Id.;* 16 J. Couch *Couch on Insurance* § 62:6 at 440, § 62:48 at 484, § 62:35 at 561 (2d ed. 1983 & 1987 Supp.).

Twenty years ago this court ruled that when an insured is covered by two policies, each containing excess clauses, the excess clauses are mutually repugnant and thus the loss must be prorated between the insurers. *See Truck Insurance Exchange v. Maryland Casualty Co.*, 167 N.W.2d 163, 164–65 (Iowa 1969); *see also* J. Couch, *Couch on Insurance* § 62:85 at 563. The rationale underlying our decision was the recognition that if two policies purport to afford only excess insurance, there can be no primary coverage. *Truck*, 167 N.W.2d at 164. Without primary coverage neither policy can operate as a policy of excess insurance, and because the excess provision has thus been rendered inoperative, the general coverage of each policy must apply on a prorated basis. *Id.* at 164–65.

Similarly, we have held that where one policy contains an excess clause and another policy contains an escape clause, those clauses are mutually repugnant and the loss is prorated between the insurers. *Un-*

*ion,* 175 N.W.2d at 418. In *Union,* the insured was test driving a car owned by a car dealership when she struck another vehicle. The insured's personal automobile insurance policy contained an *excess* clause stating that the insured's coverage with respect to a non-owned vehicle was to be excess "over any other valid and collectible insurance." *Id.* at 414. The dealership's insurance policy contained an *escape* clause which provided coverage for "any other person, but only if no other valid and collectible automobile liability insurance, either primary or excess ... [was] available to such person." *Id.* Because each policy sought to eliminate liability in the event that other insurance existed, the insured was effectively left without any coverage. *Id.*

Believing that the insured should have no less coverage than if she had coverage under only one of the policies, this court held:

> When the insured has coverage from either of two policies, but for the other, and each contains a provision reasonably subject to a construction that it conflicts with a provision in other concurrent insurance, there is a conflict.... [A] repugnancy between relative provisions of two policies is more equitably resolved by ignoring the two offending clauses.... Resultantly Iowa Hardware's policy, minus its escape clause, covers the insured, while the Union insurance policy, minus its excess clause, provides like coverage. The insured is thus protected by both insurers which is a reasonable result since each wrote expanded coverage policies which must have been intended to reach her, and this problem of double insurance was 'involuntarily thrust upon the insured through the operation of another's insurance contract.' ... [L]iability coverage, if any, must be prorated equally between plaintiff and defendant, within the combined limits.

*Id.* at 418–19 (citations omitted).

In applying this pro rata approach, the *Union* court rejected a rule adopted by some courts that a general escape clause must yield to the more specific excess clause, making the policy containing the more general escape clause primarily liable. *See id.* at 416. We rejected this approach because of our view that these insurers were engaged in a "draftsmanship battle," crafting their policies in an attempt to "out-specific the specific excess provisions" in other insurance policies so as to reduce their liability. *Id.* at 416–17.

III. United argues that its policy contains an exclusion, not an escape clause, and therefore *Union* is not controlling. United distinguishes its policy language from the escape clause contained in the *Union* policy this way: The United policy *excluded* Woodard from coverage—unless he *did not* have other insurance—whereas *Union*'s dealership policy *included* coverage of the driver unless she *did* have other insurance coverage.

The question then, is whether a provision that *includes* someone within its coverage—unless other insurance exists—is the same as a provision that *excludes* someone from coverage unless other insurance *does not* exist. The net effect appears to us the same under either clause. In other words, a person is covered if other insurance *does not* exist, and *not* covered if other insurance *does* exist. We therefore hold that a clause excluding a person from coverage—unless other insurance *does not* exist—is just as much an escape clause as one that *includes* the insured unless other insurance *does* exist. The clauses are virtually identical except that United employs a double negative to accomplish what the latter clause provides in a more straightforward manner.

By way of attempting to further distinguish the *Union* case, United argues that the removal of the claimed escape clause from Gatewood's policy does not lead to coverage of the driver, as it did in *Union,* but to no coverage at all. An insurance contract is construed as a whole, however, and not by its separate provisions. *Aeroline Flight Serv., Inc. v. Insurance Co. of North Am.,* 257 Iowa 409, 133 N.W.2d 80, 84 (1965); *Iowa Nat'l Mut. Ins. Co. v. Fidelity & Cas. Co. of New York,* 256 Iowa 723, 128 N.W.2d 891, 893

(1964). We do not read *Union* as a literal order to construe overlapping insurance policies "minus the escape and excess clauses" as if the clauses were variables in a mathematical equation. Rather, we believe *Union*'s broad holding made clear our intention to protect the person who, although doubly insured, is denied any coverage at all. *See Union,* 175 N.W.2d at 418.

 In *Union,* we stated that "when the insured has coverage from either of two policies, but for the other, and each contains a provision *reasonably subject* to a construction that it conflicts with a provision in other concurrent insurance, there is a conflict." *Id.* (emphasis added). The provision in the United policy excluding a customer like Woodard unless the customer does not have other insurance is more than "reasonably subject" to a construction that it conflicts with the excess clause in the AID policy limiting its coverage to the excess over any other coverage.

Accordingly, we affirm the trial court's application of the *Union* pro rata rule and its finding that Woodard was an insured under United's policy which entitles AID to reimbursement for United's proportional share of Woodard's defense and liability costs.

IV. In support of its cross-claim against Woodard in the Danielson action, United claimed that Gatewood Motors was entitled to indemnity from him for any judgment it might be required to pay because Gatewood's liability arose solely from its ownership of the vehicle. *See* Iowa Code § 321.493 (Supp.1987) (imposing vicarious liability upon owner for damage caused by driver operating vehicle with owner's consent.)

The trial court correctly found no factual or legal support for this indemnity claim. Neither Gatewood Motors nor United, its insurer, paid any of the judgment or court costs in the Danielson action. Thus there is nothing for which Gatewood or its subrogee, United, can be indemnified. Moreover, the district court correctly concluded that Woodard's status as an insured under the United policy prevents United

from such a recovery. It is well settled that an insurer cannot recover by right of subrogation from its own insured. *Klinger–Holtze v. Sulzbach Constr. Co.,* 262 N.W.2d 290, 294 (Iowa 1978); *Connor v. Thompson Constr. & Dev. Co.,* 166 N.W.2d 109, 113 (Iowa 1969).

United also raised an estoppel question and two evidentiary issues that we have fully considered and conclude were correctly ruled upon by the trial court and merit no attention here. Accordingly, we affirm the decision of the district court in its entirety.

AFFIRMED.