**WILLIAM C. BROWN COMPANY, Publisher's Employees' Medical Plan Trust, Robert W. Chesterman, Trustee, Appellees,**

v.

**GENERAL AMERICAN LIFE INSURANCE COMPANY, Appellant,**

and

**First National Bank of Dubuque, Iowa, Conservator for Cynthia Nichols, Defendant.**

No. 89-54.

Supreme Court of Iowa.

Jan. 24, 1990.

Rehearing Denied Feb. 16, 1990.

**868**

Donald R. Breitbach of Reynolds & Kenline, Dubuque, for appellant.

James M. Heckmann of Bauer & Heckmann, P.C., Dubuque, for appellees.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and ANDREASEN, JJ.

LAVORATO, Justice.

Insurance companies are increasingly using so-called "other insurance" provisions to limit or eliminate their liability if the insured has other insurance. In this case a claimant was covered as a dependent under her husband's employee group health plan. The claimant was also insured under an individual policy, which was issued to her after she exercised a conversion privilege in her own employee group health plan. The husband's plan had an "other insurance" provision commonly referred to in insurance industry parlance as coordination of benefits (COB). The COB provision spelled out the circumstances under which the plan would have primary or secondary responsibility to pay the claimant's medical expenses. The individual conversion policy also had an "other insurance" provision— an excess clause—that limited liability under the policy to those expenses not covered by other insurance.

The trustee of the husband's plan sued the carrier that issued the individual conversion policy for contribution for medical expenses the plan paid on behalf of the claimant. The district court determined that the COB provision was really an excess clause which meant that neither the husband's plan nor the carrier that had issued the conversion policy had primary responsibility. Under our repugnancy rule, the district court held that the COB provision and the excess clause canceled each other out. Because of this holding, the district court required the husband's plan and the carrier of the conversion policy to share the medical expenses equally.

After carefully reviewing the COB provision in the husband's plan and the excess clause in the individual conversion policy, we conclude that the husband's plan has primary responsibility under its own COB provision. So we reverse the judgment of the district court and remand for an order dismissing the trustee's petition.

I. *Background Facts and Proceedings.*

On March 29, 1981, Cynthia Nichols suffered serious injuries in an automobile accident. Because of those injuries Cynthia is permanently injured.

At the time of the accident Cynthia was an employee of A.Y. McDonald Mfg. Co. Because of her employment, Cynthia was covered by a group health accident and major medical insurance plan provided by A.Y. McDonald. The plan provided Cynthia primary coverage as an employee and not as a dependent. The plan was underwritten by General American Life Insurance Company.

When the accident happened, Cynthia was married to Daniel Nichols. Daniel was, at this time, an employee of the Wm. C. Brown Company. As Daniel's dependent, Cynthia was eligible for coverage under the Brown Company's group health plan. Cynthia's coverage under this plan was conditioned upon her remaining a dependent. For example, dissolution of marriage would terminate her coverage.

Because Cynthia's injuries prevented her from working, A.Y. McDonald terminated her employment on July 31, 1981. A provision in the A.Y. McDonald health plan ex-

tended coverage, in case of termination of employment, for six months. The plan also had an "Iowa Conversion Privilege Endorsement" to comply with Iowa law. The conversion privilege allowed a plan member who ceased to be a member of the plan to obtain "insurance protection substantially similar both in type and level of coverage" to that provided by the plan.

Cynthia elected to exercise her conversion rights and purchased an individual conversion health policy from General American. General American is the same carrier that underwrote the A.Y. McDonald health plan. General American issued Cynthia the conversion policy on August 1, 1981.

There is no dispute as to expenses incurred or benefits paid from the time of the accident through January 31, 1982. During this period General American assumed primary responsibility for Cynthia's medical expenses under the conversion policy; the Brown group plan assumed secondary responsibility.

On January 31, 1982, Cynthia's extended coverage under the A.Y. McDonald health plan terminated. At that point a dispute arose between General American and representatives of the Brown group plan about who had primary responsibility to pay Cynthia's medical expenses after January 31, 1982. The two entities agreed that the Brown group plan would pay as the primary obligor without prejudicing any rights the plan might have to recover such payments from General American.

Between February 1, 1982, and August 31, 1983, Cynthia's medical expenses totaled $27,774.91. The Brown group plan paid $20,389.76 of those expenses. General American, assuming secondary responsibility, paid the remaining $7,385.15.

On September 1, 1983, Cynthia became eligible for Medicare. Acting pursuant to a termination provision in the conversion policy, General American terminated that policy effective November 1, 1983.

On January 7, 1987, Daniel and Cynthia were divorced. From this point on Cynthia was no longer eligible for dependent coverage under the Brown group plan. After the divorce, Cynthia did not apply for a conversion policy from the Brown group plan.

In March 1985 Robert W. Chesterman, as trustee for the Brown group plan, brought a declaratory judgment action in equity against General American and First National Bank of Dubuque, Cynthia's conservator. The suit is in two counts and pleads alternative theories of recovery. Count I seeks, among other things, (1) a declaratory judgment that General American is the insurer primarily responsible for Cynthia's qualified medical expenses under the conversion policy; (2) a declaratory judgment that the Brown group plan is responsible for payment of Cynthia's qualified medical expenses under its plan in excess of those covered by General American's conversion policy; and (3) a judgment against General American for reimbursement of medical expenses paid by the plan on behalf of Cynthia in an amount not less than $40,000.

Count II seeks, in the alternative, (1) a declaratory judgment that General American is liable for not less than fifty percent of all sums expended and to be expended on behalf of Cynthia for qualified medical expenses, and (2) a judgment against General American for reimbursement of medical expenses paid on behalf of Cynthia in an amount not less than fifty percent of all sums paid by the plan plus fifty percent of any such expenses paid by the plan subsequent to the commencement of the suit.

First National was included as a necessary party; however, neither the trustee for the Brown group plan nor General American sought relief from First National. First National cross-claimed against General American for monetary relief, which the district court denied. First National did not appeal.

General American answered, seeking a judgment declaring that the individual conversion policy it issued Cynthia is an excess policy, meaning that it only covers medical expenses not covered by the Brown group plan.

The parties tried the case to the court on stipulated facts and in-court testimony.

The crux of the court's ruling is contained in this succinct paragraph:

A review of the General American individual conversion policy which was sold to Cynthia Nichols demonstrates that it does contain an "other insurance" clause. The clause is in direct competition with the coordination of benefits provision of the [Brown] group plan. Under these circumstances, and all other things being equal, these two clauses cancel each other out. The general coverage of each policy applies and each company is obligated to share the cost of coverage. *St. Paul Insurance Companies v. Horace Mann Insurance*, 231 N.W.2d 619 ([Iowa] 1975). This cited authority deals with two "other insurance" clauses and not a coordination of benefits provision. We do not find this distinction to be significant in terms of the rules of application.

Pursuant to its findings, the district court entered judgment against General American in favor of the Wm. C. Brown Company for $6,502.30 on the theory of contribution. (Actually the judgment should have been entered in favor of the trustee who was the named plaintiff.) The court determined the amount of judgment this way:

|  |  |  |
|---|---|---|
| | Medical expenses paid by the Brown group plan per agreement from February 1, 1982 through August 31, 1983 | $20,389.76 |
| Plus: | Medical expenses paid by General American per agreement during the same period | 7,385.15 |
| | Total medical expenses paid by both entities during the period | $27,774.91 |
| | 50% of total medical expenses attributable to each entity on the basis of contribution | $13,887.45 |
| Less: | Medical expenses paid by General American | $ 7,385.15 |
| | Amount of judgment | $ 6,502.30 |

One issue the district court left unresolved was whether General American lawfully terminated the conversion policy.

General American appealed, and the trustee for the Brown group plan cross-appealed. The appeal and cross-appeal raise two questions. First, did the district court err when it found that the Brown group plan and the conversion policy contained "other insurance" provisions that conflicted thereby canceling each other out? Second, did General American lawfully cancel the conversion policy?

II. *The District Court's Finding That the "Other Insurance" Provisions in the Plan and Policy Conflicted.*

In *AID Insurance Co. (Mutual) v. United Fire & Casualty Co.*, we reviewed the history, purpose, and categories of "other insurance" clauses in insurance policies:

In [*Union Insurance Co. (Mutual) v. Iowa Hardware Mutual Insurance Co.*, 175 N.W.2d 413, 415 (Iowa 1970)] we noted a trend among insurance companies toward enlarging coverage to include other persons in addition to the primary insured. This trend has spawned a corollary tendency among insurers to circumvent their expansive coverage by the use of "other insurance" clauses. The objective of "other insurance" clauses is to limit or eliminate an insurer's liability in the event that an insured has other insurance.

These "other insurance" clauses generally fall into three categories: (1) *pro rata clauses* that apportion concurring insurers' liability where there is overlapping coverage; (2) *excess clauses* that limit an insurer's liability for any part of the loss or damage which is covered by other insurance, and retain liability only for the amount of loss or damage in excess of the coverage provided by the other insurance; and (3) *escape or no liability clauses* that deny all coverage in the event the insured has other insurance coverage.

445 N.W.2d 767, 769 (Iowa 1989) (citations omitted). COB provisions are a fourth category. One court has described them this way:

COB simply means that if the same hospital, surgical or medical risk is covered

by more than one insurance carrier then the company insuring with a COB provision in its policies may reduce the amount of its payments by that payable from some other coverage. In other words, the claimant may not recover twice for the same expenses.

*American Family Life Assurance Co. v. Blue Cross of Fla., Inc.,* 486 F.2d 225, 226 (5th Cir.1973). COB provisions prescribe rules to determine when the carrier's obligation to pay is primary or secondary. Primary means the carrier pays all medical expenses that qualify for payment under the policy or plan. Secondary means the carrier's obligation is excess to all other insurance covering the insured.

■ COB provisions have as their primary characteristic a structure of priority of claim payment which enables broad risk accident and health insurance carriers to reduce the amount of premiums paid out by limiting the claimants to a single payment of benefits for a single medical risk.

*American Family Life Assurance Co. v. Blue Cross of Fla.,* 346 F.Supp. 267, 268–69 (D.C. Fla. 1972), *aff'd,* 486 F.2d 225 (5th Cir.1973). Various courts have upheld the validity of COB provisions. *See, e.g., Starks v. Hospital Serv. Plan of N.J., Inc.,* 182 N.J.Super. 342, 349, 440 A.2d 1353, 1358, 25 A.L.R. 4th 1009, 1014 (1981). These provisions are valid and enforceable so long as they do not "impinge upon a beneficiary's right to and expectations of full coverage." *Id.* Reasons that justify the use of such provisions include the following: (1) preventing the insured from recovering more than is necessary to make the insured whole; (2) keeping premium rates as low as possible while assuring full compensation to the group policy holder; and (3) reimbursing employees for their medical expenses while at the same time not enabling them to profit from their illnesses or injuries. *Gibson v. Metropolitan Life Ins. Co.,* 213 Kan. 764, 770, 518 P.2d 422, 427 (1974).

The question here, of course, is what portion of the total medical expenses should each party stand. When two entities provide insurance coverage for the same loss, we generally determine the question of their respective obligations by construing the language used by each entity and not upon any arbitrary rule or circumstance. *Truck Ins. Exch. v. Maryland Casualty Co.,* 167 N.W.2d 163, 164 (Iowa 1969).

We have settled the responsibility in disputes between "pro rata" and "excess" clauses, between "pro rata" and "escape" clauses, between two "excess" clauses, and between "excess" and "escape" clauses. *See, e.g., Motor Vehicle Cas. Co. v. LeMars Mut. Ins. Co.,* 254 Iowa 68, 72–75, 116 N.W.2d 434, 436–38 (1962) ("pro rata" and "excess"); *Burcham v. Farmers Ins. Exch.,* 255 Iowa 69, 71–76, 121 N.W.2d 500, 503–04 (1963) ("pro rata" and "escape"); *Truck Ins. Exch. v. Maryland Casualty Co.,* 167 N.W.2d 163, 164–65 (Iowa 1969) (two "excess" clauses); *Union Ins. Co. (Mut.) v. Iowa Hardware Mut. Ins. Co.,* 175 N.W.2d 413, 418–19 (Iowa 1970) ("excess" and "escape"); *AID Ins. Co. (Mut.) v. United Fire & Casualty Co.,* 445 N.W.2d at 770–71 ("excess" and "escape"). This case, however, is one of first impression involving a COB provision and an excess clause.

In *Truck* we held that the two excess clauses were mutually repugnant and determined that the loss must be prorated between the insurers. We based our holding on the following rational:

As applied to the facts of the present case, both policies provide that they shall be 'excess' insurance. However, it is obvious that there can be no 'excess' insurance in the absence of 'primary' insurance. Since neither policy by its terms is a policy of 'primary' insurance neither can operate as a policy of 'excess' insurance. The excess insurance provisions are mutually repugnant, and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to

share in the cost of the settlement and expenses. We think that such a conclusion affords the only rational solution of the present dispute.

*Truck Insurance Exch. v. Maryland Casualty Co.*, 167 N.W.2d at 164–65 (quoting *Cosmopolitan Mutual Insurance Co. v. Continental Casualty Co.*, 28 N.J. 554, 572, 147 A.2d 529, 534, 69 A.L.R.2d 1115, 1121 (1959). We reached the same result in *AID Ins.* and *Union*, two cases involving policies containing an excess clause and policies containing an escape clause. We concluded in both cases that a finding of no repugnancy would have left the insured without any coverage. *AID Ins. Co. (Mut.) v. United Fire & Casualty Co.*, 445 N.W.2d at 771; *Union Ins. Co. (Mut.) v. Iowa Hardware Mut. Ins. Co.*, 175 N.W.2d at 418.

■ In its COB provision, the Brown group plan establishes the following rules to determine when its obligation is primary and when it is secondary:

> For the purposes of these provisions the rules establishing the order of benefits determination are:
> (a) The benefits of a Plan which covers the individual on whose expense claim is based other than as a dependent shall be determined before the benefits of a Plan which covers such individual as a dependent;
> (b) The benefits of a Plan which covers the individual on whose expense claim is based as a dependent of a male individual shall be determined before the benefits of a Plan which covers such individual as a dependent of a female individual;
> (c) When rules a and b in this subparagraph ... do not establish an order of benefit determination, the benefits of a Plan which has covered the individual on whose expense claim is based for the longer period of time shall be determined before the benefits of a Plan which has covered such individual the shorter period.

Under rule (a) the plan covering the claimant as an insured has the primary obligation; the plan covering the claimant as a dependent of an insured has the secondary obligation. Under rule (b) the plan covering the claimant as a dependent of a male individual has the primary obligation; the plan covering the claimant as a dependent of a female individual has the secondary obligation. Rule (c) is triggered if rules (a) and (b) do not apply. In these circumstances the plan that has covered the claimant the longer period of time has the primary obligation; the plan that has covered the claimant the shorter period of time has the secondary obligation.

The word "plan" in the COB provision includes, among other things, "any group, franchise, hospital or medical service, prepayment or *other coverage arranged through any employee, trustee, employee benefit or other association.*" For our purposes we assume, without deciding, that the italicized words include the General American conversion policy.

Under rule (a) the General American conversion policy would have primary responsibility—absent its excess clause—because the policy covered Cynthia as an insured. The Brown group plan would have secondary responsibility because in the plan Cynthia is covered as a dependent of an insured.

Rule (b) would not apply because only the Brown group plan covers Cynthia as a dependent. Rule (c) might apply if the excess clause in the General American conversion policy precludes application of rule (a). In these circumstances the Brown group plan would have primary responsibility because it has covered Cynthia longer than the General American conversion policy. The General American conversion policy would have secondary responsibility.

The excess clause in the General American conversion policy provides in pertinent part:

> In the event that a covered loss is also covered by [a] ... medical or hospital services plan, then the coverage provided by this policy shall be deemed to be excess to that provided by the ... medical or hospital services plan.

This language clearly evidences an intent on the part of General American that it would always have secondary responsibility when there was other coverage. The application of rule (a) in the COB provision of the Brown group plan would obviously defeat this intention. In these circumstances the two provisions—rule (a) in the COB provision of the plan and the excess clause in the General American policy—cancel each other out because there would be no primary responsibility. *Truck Ins. Exch. v. Maryland Casualty Co.*, 167 N.W.2d at 164–65.

Rule (b), as we said, has no application. That leaves rule (c), which we think controls. Because the Brown group plan provided coverage to Cynthia longer than the General American conversion policy, the plan has, under rule (c) of its COB provision, primary responsibility.

Because the Brown group plan has primary responsibility, the General American conversion policy has other insurance to which the General American policy is excess. So the district court erred when it applied the rule of repugnancy and canceled out the COB provision and the excess clause. *See id.*

Our construction of the COB provision here allows Cynthia one full recovery. At the same time our construction allows insurance companies to contract as they see fit. The net result, of course, is to keep premiums at a reasonable level.

### III. *Cancellation of the General American Conversion Policy.*

General American canceled Cynthia's conversion policy because of her eligibility for Medicare. The company did so pursuant to a policy provision that provided:

> The insured and the spouse of the insured, of a covered member, shall cease to be a covered member on the premium due date next following the date of becoming eligible for Federal Medicare.

At the time the conversion was made, General American was required by law to provide Cynthia "insurance protection substantially similar in type and level of coverage" to that provided in the A.Y. McDonald health plan. Iowa Code § 509.3(4)(a) (1981). The trustee contends the cancellation was not effective. In support of this contention the trustee argues that the plan lacked a cancellation provision because of Medicare; therefore, the conversion policy should likewise not have contained such a provision. Giving effect to the cancellation provision would, the trustee concludes, violate the "substantially similar in type and level of coverage" requirement in section 509.3(4)(a). Because of such violation, the trustee urges us to vitiate the cancellation.

The trustee offers one additional argument: the cancellation provision should be ignored because it conflicts with the coverage language in the A.Y. McDonald health plan. In view of this alleged conflict, the trustee urges us to construe the plan and General American's conversion policy against General American and give Cynthia the broadest coverage.

If the cancellation was not effective, the trustee thinks that General American should have paid, secondary to Medicare, Cynthia's medical expenses from the cancellation date until her divorce. The trustee, contrary to the district court's finding, insists there is record evidence that the Brown group plan paid, secondary to Medicare, these expenses totaling $37,887.53. The trustee asks us to find that the district court erred when it did not enter judgment in his behalf against General American for this amount.

We need not decide what Iowa Code section 509.3(4)(a) means because, as between the Brown group plan and the conversion policy, the plan's responsibility would be secondary to Medicare with or without the cancellation. In division II we determined that the plan had, under its COB provision, the primary responsibility as between it and the conversion policy. That relationship, as between the two, would have continued even without a cancellation of the conversion policy. Once Cynthia became eligible for Medicare, the Brown group plan's responsibility became secondary to Medicare. The plan's responsibility would have been the same even with the conversion policy in force. After Medicare began

paying, the plan actually benefited to the extent its responsibility decreased from primary, to secondary to Medicare.

We conclude the plan correctly paid the $37,887 and that the trustee was not entitled to a judgment against General American for that amount.

### IV. *Disposition.*

The Brown group plan had primary responsibility under its COB provision; General American's conversion policy was excess to that primary responsibility. So General American's liability for Cynthia's medical expenses from February 1, 1982, through August 31, 1983, was $7,385.15, the amount it paid. The district court erred in entering judgment, on the basis of contribution, against General American for $6,502.30.

Once Cynthia became eligible for Medicare, the Brown group plan's position changed from primary, to secondary to Medicare. The plan's obligation from the time General American terminated the conversion policy until Cynthia's divorce was $37,887.53, the amount the plan paid. The plan was not entitled to any judgment against General American for medical expenses it paid during this period.

Because we conclude the district court erred when it entered judgment against General American for $6,502.30, we reverse and remand. On remand the district court shall enter an order setting aside the judgment against General American and dismissing the trustee's petition.

REVERSED AND REMANDED WITH DIRECTIONS.