STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellant, *v.* RONALD CRAMER, Respondent.

No. 22965

July 29, 1993                                857 P.2d 751

*Pearson & Patton* and *Theodore J. Kurtz,* Las Vegas, for Appellant.

*David Allen & Associates* and *James W. King,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

The instant controversy requires us to determine whether NRS 689A.230(2) applies to a catastrophic medical expense rider issued by appellant State Farm Mutual Automobile Insurance Company to the respondent, Ronald Cramer. We conclude that it does not and reverse the entry of partial summary judgment in favor of Cramer and the denial of State Farm's motion for summary judgment.

### FACTS

The facts are not disputed. On November 7, 1987, Cramer was injured in an automobile collision and incurred a total of $35,120.95 in medical expenses. At the time of the accident, Cramer had medical expense coverage through his automobile and health insurance policies. Cramer purchased both policies from appellant State Farm Mutual Automobile Insurance Company, dba State Farm Health Insurance Company ("State Farm"), and paid separate premiums for the policies.

The automobile insurance policy provided medical payment coverage ("MPC") up to $25,000. The health insurance policy provided basic coverage for hospital, surgical and miscellaneous medical expenses. A Catastrophic Medical Expense Rider ("CMER") appended to the health insurance policy provided an additional $1,000,000 in medical expense coverage. Benefits under the CMER were payable if Cramer's medical expenses exceeded the sum of benefits payable to him from other medical expense coverage.[1] "Other medical expense coverage" included automobile MPC.

In 1987, Cramer submitted $3,991.26 in accident-related medical bills to State Farm. Of that amount, $1,378.40 was paid under the base health insurance policy. State Farm also paid $4,442.09 under the automobile MPC. Thus, Cramer received $1,829.23 over and above his actual medical expenses for 1987.

---

[1]Additionally, Cramer must have incurred $1,500 in out-of-pocket expenses, which the policy defined as "Covered Medical Expenses which are not paid or payable as benefits under Other Medical Expense Coverage."

Cramer subsequently submitted bills totaling $31,129.69 for medical expenses incurred in 1988. State Farm paid $12,960.20 in accordance with the terms of the base health insurance policy, leaving a balance of $18,169.49 in unreimbursed medical expenses. State Farm then paid Cramer $20,557.91, the remainder of the automobile MPC policy limits. Thus, State Farm paid Cramer $2,388.42 more than he incurred for medical expenses in 1988. In total, Cramer received $4,217.56 in excess payments from State Farm.[2]

Cramer did not incur any out-of-pocket medical expenses in either year nor does Cramer claim to have incurred medical expenses other than as indicated above. However, Cramer apparently elected not to pay his health care providers either from the insurance proceeds he had received from State Farm or otherwise. Consequently, Cramer, through his counsel, sought additional medical expense benefits from State Farm pursuant to the CMER. State Farm denied coverage. By letter dated February 6, 1990, State Farm explained that since Cramer had not incurred any out-of-pocket expenses, and in fact had received benefits in excess of his medical expenses, he had not met the threshold amount entitling him to benefits under the CMER.

Dissatisfied with this response, Cramer filed the instant action, alleging tortious breach of contract, breach of fiduciary duty, unfair settlement practices, and fraud. Cramer sought compensatory and punitive damages.

After a year of discovery, State Farm moved for summary judgment. State Farm contended that coverage under the catastrophic medical expense rider was precluded because Cramer had not satisfied the threshold amount. State Farm asserted that it was not liable for bad faith or punitive damages because it had reasonably interpreted its CMER as precluding coverage thereunder and had paid Cramer all the benefits to which State Farm believed Cramer was entitled under both policies.

Cramer responded with a motion for partial summary judgment on the issue of liability. Cramer argued that by including the automobile MPC in the CMER's "threshold amount" calculation, State Farm was asserting a set-off in violation of NRS 689A.230(2).[3]

---

[2] In addition, Cramer received $47,739.51 for bodily injury and an unspecified amount for property damage from the adverse driver's insurance company.

[3] NRS 689A.230(2) provides in relevant part:

> If the policy provision stated in subsection 1 is included in a policy which also contains the policy provision stated in NRS 689A.240, there shall be added to the caption of the provision stated in subsection 1 of

The district court initially denied both motions. Upon rehearing, however, the district court granted Cramer's motion for partial summary judgment and denied State Farm's motion for summary judgment. The district court ruled that: "Defendant's application of its set-off provision to Plaintiff's automobile medical payment coverage violates NRS 689A.230(2), and therefore is illegal as a matter of law." The judgment was certified as final under NRCP 54(b) and State Farm filed a timely appeal.

For the reasons discussed below, we conclude that NRS 689A.230(2) is inapplicable to State Farm's CMER and that State Farm is entitled to judgment as a matter of law.

## DISCUSSION

Cases of contractual and statutory construction, in the absence of ambiguity or other factual complexities, present questions of law appropriately determined by summary judgment. Ellison v. California State Auto. Ass'n, 106 Nev. 601, 603, 797 P.2d 975, 977 (1990).

This case requires us to determine whether the terms of an insurance contract come within the ambit of NRS 689A.230. We conclude that they do not.

The parties agree that the terms of the catastrophic medical expense rider are unambiguous. State Farm's CMER provides in relevant part:

> If, while this rider is in force, a Covered Person incurs Covered Medical Expenses during a calendar year *in excess of the Threshold Amount,* the Company will pay, subject to the provisions, exclusions and limitations of this rider, benefits for that Covered Person's Covered Medical Expenses incurred during such calendar year. The amount of such benefits payable under this rider is the amount by which all such Covered Medical Expenses incurred for that Covered

the phrase "expense-incurred benefits." The insurer may make this provision applicable to either or both:

    (a) Other valid coverage with other insurers; and

    (b) Other valid coverage with the same insurer.

*The insurer shall include in this provision a definition of "other valid coverage" approved as to form by the commissioner.* Such term may include hospital, surgical, medical or major medical benefits provided by individual or family-type coverage, government programs or workmen's compensation. *Such term shall not include any group insurance, automobile medical payments or third party liability coverage.* The insurer shall not include a subrogation clause in the policy. The insurer may require, as part of the proof of claim, the information necessary to administer this provision. (Emphasis added.)

Person during the calendar year *exceed the Threshold Amount.* (Emphasis added.)

The "threshold amount" is defined as the sum of:

A. The amount of benefits provided for a Covered Person's Covered Medical Expenses by Other Medical Expense Coverage, and

B. Fifteen Hundred Dollars ($1,500) Out-of-Pocket Expenses per Covered Person.

"Other Medical Expense Coverage" includes benefits for covered medical expenses under an automobile insurance policy.

Cramer argues, and the district court agreed, that paragraph (A) violates NRS 689A.230(2) because it includes automobile MPC within the definition of "other medical expense coverage." Cramer's argument is based upon his characterization of paragraph (A) as a "coordination of benefits" clause. Contrarily, State Farm contends that the CMER is not subject to NRS 689A.230(2) because it does not provide for coordination of benefits but instead unambiguously provides for excess coverage. We are persuaded that State Farm's position is correct.

NRS 689A.230 is entitled "Coordination of benefits: All Coverages." Subsection 1 contains a model "coordination of benefits" ("COB") provision which may be included in health insurance policies. "Coordination of benefits provision" is defined as a provision "which may reduce an insurer's liability because of the existence of benefits under other valid coverage." NRS 689A.230(1)(3). Under a COB, if an insured's benefits under more than one policy exceed his medical expenses, the insurers' liability is determined on a pro rata basis. NRS 689A.230(2) permits an insurer to apportion liability between or among other valid coverage, whether provided by other insurers or the same insurer. However, automobile medical payments are expressly excluded from "other valid coverage." *Id.*

A COB clause is, essentially, a non-duplication of benefits provision. The primary characteristic of a COB provision is a structure of priority of claims payments enabling insurers to reduce liability and preventing double recovery by an insured. American Family Life Assur. Co. v. Blue Cross, 486 F.2d 225, 226 (5th Cir. 1973), *cert. denied,* 416 U.S. 905 (1974); *see also* William C. Brown Co. v. General Amer. Life Ins., 450 N.W.2d 867 (Iowa 1990) (COB provisions prescribe rules to determine when insurer's payment obligation is primary or secondary); *see generally,* 1C John A. Appleman and Jean Appleman, *Insurance*

*Law and Practice* § 708 (1981). By contrast, an excess clause provides for the payment of a loss to the extent the loss exceeds other available insurance. Starks v. Hospital Serv. Plan, 440 A.2d 1353, 1355 (N.J.Super.Ct.App.Div. 1981), *aff'd,* 453 A.2d 159 (N.J. 1982). An excess insurer becomes liable once the primary insurer's policy limits have been exhausted. 8A Appleman, *Insurance Law and Practice* § 4909; *see generally* Andrea G. Nadel, Annotation, *Priority and Apportionment of Liability Between Medical and Hospital Expense Insurers,* 25 A.L.R.4th 1022, 1026 (1983) (the excess insurer is not liable for any part of the loss which is covered by other insurance, but is liable only for the amount of loss in excess of the coverage provided by another policy of health or medical insurance).

The language at issue in this appeal is contained in a catastrophic rider. The purpose of a catastrophic policy is to provide additional coverage to meet substantial medical expenses not paid by other insurance. 1 Appleman, *Insurance Law and Practice* § 29. Generally, coverage under a catastrophic policy does not come into effect until after lesser policies are exhausted. *Id.*

The CMER cannot reasonably be construed as a coordination of benefits clause. Paragraph (A) of the CMER lacks the primary characteristic of a COB in that it does not purport to apportion liability between or among primary insurers or policies. Our conclusion is supported by the fact that State Farm paid benefits under Cramer's auto and health policies without apportioning liability between the policies as allowed by NRS 689A.230. In fact, State Farm paid Cramer more than 100% of the total medical expenses he incurred—a result the COB is intended to prevent.

The CMER is more appropriately construed as excess coverage. The concededly unambiguous terms of the CMER provide for payment of medical expenses which *exceed* the sum of benefits paid by other medical coverage and $1,500 in out-of-pocket medical expenses not covered by other insurance.

We will not rewrite unambiguous insurance policy provisions or attempt to increase the parties' legal obligations where the parties intentionally limited such obligation. Senteney v. Fire Ins. Exchange, 101 Nev. 654, 656, 707 P.2d 1149, 1150 (1985). Accordingly, we conclude that the catastrophic medical expense rider appended to Cramer's health insurance policy provides excess coverage and thus does not implicate the proscription of NRS 689A.230(2). Coverage under the rider was not available to Cramer because no unreimbursed medical expenses remained after the automobile MPC and health insurance coverages were

exhausted. Thus, State Farm properly denied additional coverage under the CMER.

We have carefully considered the other issues raised on appeal and conclude that they lack merit or need not be addressed given our disposition of this matter.

For the reasons abbreviated above, the partial summary judgment in favor of Cramer is reversed and the cause remanded with directions to enter summary judgment in favor of State Farm.