**ILLINOIS NATIONAL INSURANCE COMPANY, Appellant,**

v.

**FARM BUREAU MUTUAL INSURANCE COMPANY, Appellee.**

No. 96–1713.

Supreme Court of Iowa.

May 28, 1998.

John A. McClintock and James M. Ballard of Hansen, McClintock & Riley, Des Moines, for appellant.

Angela A. Swanson of Morain, Burlingame, Pugh & Koop, West Des Moines, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

HARRIS, Justice.

This is a dispute between two insurers concerning their respective responsibilities under competing "other insurance" clauses. The trial court declined to prorate their responsibilities on the basis of the combined policy limits, but rather applied the "closer to the risk" test used by the Minnesota courts. Because we are not persuaded to subscribe to the Minnesota doctrine, we reverse and remand.

Larry Boughn was injured in a fall from a pickup truck owned by Steven Crozier and operated by Steven's brother, Gary Crozier. The accident occurred on Gary's farm. Steven, as owner of the vehicle, had insurance with National Insurance Association with a $20,000 coverage limit. Gary had automobile liability insurance with the plaintiff, Illinois National Insurance Company, which covered him as the operator of the vehicle up to $25,000. Gary also had farm liability insurance through the defendant, Farm Bureau Mutual Insurance Company, with a policy

limit of $300,000. This policy insured Gary for damages for personal injuries caused by accidents on his farm.

Boughn's tort action against Gary for damages as a result of his injuries was subsequently settled for $72,000. Because National Insurance, under its policy with Steven, was considered the primary insurer, it paid its full policy limit of $20,000. Although Farm Bureau and Illinois National agreed to pay the remaining portion of damages as excess insurers, a dispute arose regarding their contributions under their "other insurance" clauses. Farm Bureau's provision on "other insurance" provided:

> This insurance is excess over any other valid and collectible insurance, except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

Illinois National's "other insurance" provision provided:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proration that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Illinois National brought this action for declaratory judgment seeking pro rata contributions for the settlement remainder. Such a method would have required Illinois National to pay only one-thirteenth (or $5200) of the remaining settlement, with Farm Bureau responsible for the remaining portion. Farm Bureau answered seeking a determination that Farm Bureau's coverage was limited to the excess over the Illinois National coverage limits. Farm Bureau contends that Illinois National, as an automobile liability insurer, was the primary excess insurer so it should have to pay the amount remaining after Illinois National's $25,000 coverage had been exhausted.

The case was submitted on stipulated facts. The district court concluded Illinois National should be primarily liable for the remaining settlement and was required to pay the full policy limit of its automobile insurance before any contribution from Farm Bureau. In doing so the court utilized the "closer to the risk" analysis followed in *Illi-nois Farmers Insurance Co. v. Depositors Insurance Co.*, 480 N.W.2d 657, 659 (Minn. Ct.App.1992).

Illinois National appeals.

I. Our review is on error. Iowa R.App. P. 4. When a case is submitted on stipulated facts, our only task is to construe the provisions of the insurance policies. *Hernandez v. Farmers Ins. Co.*, 460 N.W.2d 842, 843 (Iowa 1990). The construction of an insurance contract and the interpretation of its language are matters of law for the court. *Kalell v. Mutual Fire & Auto. Ins. Co.*, 471 N.W.2d 865, 866–67 (Iowa 1991). We are therefore not bound by the district court's interpretation and ruling. *North Star Mut. Ins. Co. v. Holty*, 402 N.W.2d 452, 454 (Iowa 1987).

II. There has been a trend among insurance companies toward enlarging coverage to include other persons in addition to the primary insured. *Aid Ins. Co. (Mut.) v. United Fire & Cas. Co.*, 445 N.W.2d 767, 769 (Iowa 1989). This trend has spawned a corollary tendency among insurers to circumvent their expanded coverage by the use of "other insurance" clauses. *Id.* These "other insurance" clauses generally fall into three categories: (1) *pro rata clauses* that apportion concurring insurers' liability when there is overlapping coverage; (2) *excess clauses* that limit an insurer's liability for any part of the loss or damage which is covered by other insurance, and retain liability only for the amount of loss or damage in excess of the coverage provided by the other insurance; and (3) *escape or no liability clauses* that deny all coverage in the event the insured has other insurance coverage. *Id.*

This case involves two insurance policies, each of which has excess clauses. The "other insurance" clause in Farm Bureau's policy is purely an excess clause. In contrast the "other insurance" clause in the Illinois National policy is pro rata in most instances, except when the vehicle is not owned by the insured. The pickup truck was not owned by Gary, thus Illinois National's excess clause is controlling.

Illinois National relies on a trilogy of cases. In *Truck Insurance Exchange v. Ma-*

*ryland Casualty Co.*, 167 N.W.2d 163 (Iowa 1969), one company insured both a lessor and lessee of a truck that was involved in a two-truck accident. The second truck was similarly insured by a second company. We found the excess clauses in the two policies were mutually repugnant and consequently prorated the loss. *Truck Ins. Exch.*, 167 N.W.2d at 164–65. Our rationale was a recognition that, if two policies purport to afford only excess insurance, there can be no primary coverage. *Id.* at 164. Without primary coverage neither policy can operate as a policy of excess insurance. Because the excess provision would thus be rendered inoperative, the general coverage of each policy must apply on a prorated basis. *Id.* at 164–65.

Shortly thereafter we decided *Union Insurance Co. (Mutual) v. Iowa Hardware Mutual Insurance Co.*, 175 N.W.2d 413, 418 (Iowa 1970), in which we held that when one policy contains an excess clause and another policy contains an escape clause, those clauses are mutually repugnant and the loss is prorated between the insurers. Believing that the insured should have no less coverage than if she had coverage under only one of the policies, we held:

> When the insured has coverage from either of two policies, but for the other, and each contains a provision reasonably subject to a construction that it conflicts with a provision in other concurrent insurance, there is a conflict.... [A] repugnancy between relative provisions of two policies is more equitably resolved by ignoring the two offending clauses. Resultantly Iowa Hardware's policy, minus its escape clause, covers the insured, while the Union Insurance policy, minus its excess clause, provides like coverage. The insured is thus protected by both insurers which is a reasonable result since each wrote expanded coverage policies which must have been intended to reach her, and this problem of double insurance was "involuntarily thrust upon the insured through the operation of another insurance contract." ... [L]iability coverage, if any, must be prorated equally between plaintiff and defendant, within the combined limits.

*Union Ins. Co. (Mut.)*, 175 N.W.2d at 418–19 (citation omitted).

In applying this pro rata approach, we rejected a rule adopted by some courts that a general escape clause must yield to the more specific excess clause, making the policy containing the more general escape clause primarily liable. *See id.* at 416. We rejected this approach because the insurers were engaged in a "draftsmanship battle," crafting their policies in an attempt to "out specific the specific excess provisions" in other insurance policies so as to reduce their liability. *Id.* at 416–17.

*Aid Insurance Co. (Mutual)* was the last of the trilogy. There a car dealership and a customer both had insurance to cover an accident during a test drive. *Aid Ins. Co. (Mut.)*, 445 N.W.2d at 768–69. Both policies contained other insurance provisions—one an excess provision and one an escape provision. *Id.* We held *Union* was controlling and thus the liability between the insurers was prorated in proportion to the maximum amount of coverage provided in the respective policies. *Id.* at 769.

■ The foregoing cases have thus settled the responsibilities in disputes between excess and escape clauses and between two excess clauses by choosing a clear rule: when confronted with mutually repugnant excess or escape clauses, the loss must be prorated between the insurers in accordance with the policy limits. *See, e.g., Aid Ins. Co. (Mut.)*, 445 N.W.2d at 770–71 (excess and escape); *Union Ins. Co. (Mut.)*, 175 N.W.2d at 418–19 (excess and escape); *Truck Ins. Exch.*, 167 N.W.2d at 164–65 (two excess clauses); *accord Motor Club of Iowa Ins. Co. v. Iowa Mut. Ins. Co.*, 508 N.W.2d 634, 637–38 (Iowa 1993) (two excess clauses).

III. Application of the pro rata rule developed in the trilogy does not always accommodate the expectations of an insurer. Our rule is criticized because assignment of insurers' relative responsibilities in the loss, being pegged to the dollar coverage provided, does not reflect the essential nature and scope of the risk contemplated in the policy. The trilogy cases involved confrontations between similar policies; all were automobile policies. In urging the Minnesota rule, Farm Bureau argues the rule from the trilogy cases should apply only when the policies purport to cover

the same type of loss. There is some support for this position. *See Hastings Mut. Ins. Co. v. Auto. Ins. Co.*, 780 F.Supp. 1153 (W.D.Mich.1991). Other courts have disagreed, upon finding "no meaningful basis" to conclude that one policy is more "specific" than the other. *See, e.g., Liberty Mut. Ins. Co. v. United States Fidelity & Guar. Ins. Co.*, 756 F.Supp. 953, 956 (S.D.Miss.1990) (even though policies designated named insureds differently, where both policies provided primary CGL coverage, both were "other insurance" and had to contribute pro rata; the court distinguished situation from where one policy provided blanket coverage and another more specific policy covered the property or risk); *B.K. Gen. Contractors, Inc. v. Michigan Mut. Ins. Co.*, 204 A.D.2d 584, 612 N.Y.S.2d 198, 199 (1994) (insurers were co-insurers since they covered the same insured and the same risk; status as co-insurers not affected by the fact that one insurer's policy provided coverage for liability beyond that provided by other insurer).

The Minnesota court considered the "closer to the risk" rule more fair because it thought the coverage contemplated by the policies—and the premiums paid for them— should be the primary consideration in assigning the responsibility in this type of dispute. *See Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.*, 433 N.W.2d 82, 86 (Minn.1988) (rejecting proration approach, opting instead for a "closer to the risk" approach). Three factors are considered in determining which policy is closer to the risk. They are: (1) which policy specifically described the accident-causing instrumentality; (2) which premium is reflective of the greater contemplated exposure; and (3) does one policy contemplate the risk and use of the accident-causing instrumentality with greater specificity than the other policy. *Id.*

There is something to be said for the Minnesota rule, though we certainly did not subscribe to its approach in *Truck* where we concentrated only on the effect of competing excess provisions in the policies. *Truck Ins. Exch.*, 167 N.W.2d at 164. We nevertheless prefer to apply our rule. For one thing the rule announced in *Truck* is clear and easy to apply. Assessing which policy is closer to the risk would often be a tricky business, and would be a fertile field for much dispute and litigation. Coverage of losses by an unrelated policy might, as it does here, lead to a surprising result in view of a modest premium charge. But we do not think it follows that we should therefore fail to apply a clear and workable rule.

Clearness is a prime consideration in settling on a rule, though certainly not the controlling one. Simple fairness often demands a more complex application in preference to one more easily applied. We think it would be easier for the insurers to assess the risks and the appropriate premiums involved, than for the courts to process the disputes among the insurers under the "closer to the risk" doctrine.

We conclude the trial court erred in not applying the test enunciated in *Truck*. The two excess provisions are mutually repugnant, and the loss should be prorated between Illinois National and Farm Bureau. The judgment of the trial court must be reversed and the case remanded for entry of judgment accordingly.

**REVERSED AND REMANDED.**