**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

JUL 28 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| POLYMER PLASTICS CORPORATION, | No. 08-17497 |
| Plaintiff - Appellant, | D.C. No. 3:05-cv-00143-ECR-VPC |
| v. | |
| HARTFORD CASUALTY INSURANCE COMPANY, | MEMORANDUM * |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the District of Nevada
Edward C. Reed, District Judge, Presiding

Argued and Submitted December 3, 2009
San Francisco, California

Before: B. FLETCHER, THOMAS, and N.R. SMITH, Circuit Judges.

Polymer Plastics Corporation ("Polymer") appeals the district court's

judgment, following a partial summary judgment and a jury trial, in Polymer's

diversity action against its insurer Hartford Casualty Insurance Company

---

  *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

("Hartford"). Polymer challenges several of the district court's rulings on summary judgment regarding (1) the business income claim, (2) the district court's rulings on evidence of mold, (3) the district court's ruling on punitive damages, and (4) the district court's jury instruction regarding general noneconomic damages. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here. We affirm the district court.

I

The district court did not commit reversible error in its interpretation of the insurance contract. "It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law." *Am. Triticale, Inc. v. Nytco Servs. Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Moreover, the decisions of the Nevada State Supreme Court bind this Court when interpreting Nevada state law. *NLRB v. Calkins*, 187 F.3d 1080, 1089 (9th Cir. 1999) (citation omitted).

Under Nevada law, every word in a contract must be given effect if at all possible. *Bell v. Levan*, 90 P.3d 1286, 1288 & n.6 (Nev. 2004). "A[n] [insurance] policy is also judged as a whole: a court must look 'to the entire contract . . . for a true understanding of what risks are assumed by the insurer and what risks are excluded.'" *Montana Ref. Co. v. Nat'l Union Fire Ins. Co.*, 918 F. Supp. 1395,

1397 (D. Nev. 1996) (quoting *Nat'l Union Fire Ins. Co. v. Reno's Executive Air*, 682 P.2d 1380, 1383 (Nev. 1984)). "[T]he court will not 'rewrite' the terms of the contract." *Montana Ref. Co.*, 918 F. Supp. at 1398 (quoting *State Farm Mut. Auto Ins. Co. v. Cramer*, 857 P.2d 751, 755 (Nev. 1993)).

The district court's formulation of the Policy achieves the purpose of the insurance provision in the first place, and most closely conforms to the actual text of the Policy itself. The essential purpose of business interruption insurance is to place the insured in the position it would have occupied if the interruption had not occurred. *Business Protection or Interruption Insurance*, 46 C.J.S. § 1531. Polymer's formulation ignores the term "*actual* loss of business income" by refusing to take into consideration the gross profits earned during the period of restoration. The Policy as a whole demonstrates an agreement to pay for actual losses, and not for any recovery above that amount. Adopting Polymer's interpretation would ignore the term "actual loss" as well as the other provisions of the Policy that limit coverage to losses actually suffered. Therefore, we see no error in the district court's interpretation of the Policy as a whole.

Polymer also argues that, at the very least, its interpretation of the Policy is reasonable, and the district court should have adopted its interpretation because Nevada law requires courts to resolve any ambiguities in an insurance contract in

favor of the insured. *See Insurance Corp. of Am. v. Rubin*, 818 P.2d 389, 392 (Nev. 1991). As evidence that the Policy could reasonably be interpreted as requiring Hartford to compensate Polymer for continuing normal operating expenses plus net income that would have been earned, without subtracting gross profits actually earned, Polymer relies on *Continental Ins. Co. v. DNE Corp.*, 834 S.W.2d 930 (Tenn. 1992). But the insured in that case was projected to operate at a loss, simplifying the calculation.

In addition, the *Continental* court specifically reiterated that a policy should not be interpreted to put the insured "in a better economic position from having had its business interrupted than it would have occupied had there been no interruption of its business operations." 834 S.W.2d at 934. In fact, such "an interpretation would obviously be inconsistent with the purposes of providing insurance, as well as with the decisions in other cases involving similar issues." *Id.*; *see also B.F. Carvin Constr. Co., Inc. v. CNA Ins. Co.*, 2008 WL 5784516, at *3 (E.D. La. July 14, 2008) ("[T]his type of policy is designed to prevent the insured from being placed in a *better* position than if no loss or interruption of business occurred."). Therefore, we conclude that the district court did not err in its business income loss methodology.

II

4

The district court did not err in granting summary judgment for Hartford on Polymer's claim that Hartford breached the implied covenant of good faith and fair dealing in determining the loss of business income.

In Nevada, every contract imposes the duty of good faith and fair dealing, and the relationship of an insured to an insurer is "one of special confidence" akin, but not ascending to, a fiduciary relationship. *Wholers v. Bartgis*, 969 P.2d 949, 956 (Nev. 1998) (internal quotation marks omitted). In the insurance context, "[b]ad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct." *Id.* (internal quotation marks omitted). "To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was no reasonable basis for disputing coverage." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998).

When an insurance company's interpretation of the contract is reasonable, there can be no basis for concluding that the insurance company acted in bad faith. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354-55 (Nev. 1986). A "jury question on insurer's bad faith arises when relevant facts are in dispute or when facts permit differing inferences as to the reasonableness of

5

insurer's conduct." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 197 (Nev. 1989). Here the district court correctly granted summary judgment for Hartford on this claim.

The evidence Polymer presents to demonstrate bad faith simply does not seriously put relevant facts in dispute or reasonably permit differing inferences as to the reasonableness of the insurer's conduct. Hartford's varied attempts at calculating the Business Income claim resulted from Polymer's providing the necessary documentation in a piecemeal fashion. While it does appear that Hartford was slow in paying on the claim (it argues because of delay in receiving documentation), the district court allowed the issue of bad faith delay in payment to go to the jury, which found in favor of Hartford.

Hartford's interpretation of the Policy, focusing on the *actual loss* suffered by Polymer during the period of restoration, while not identical to the formulation finally determined by the district court, was reasonable, and therefore not in bad faith. Because Hartford had a reasonable basis in law and fact for its position, the district court correctly granted summary judgment on the claim.

III

The district court did not err in determining that Hartford's assignment of one adjuster to adjust two claims did not constitute bad faith as a matter of law.

6

Again, "[b]ad faith is established where the insurer acts unreasonably *and* with knowledge that there is no reasonable basis for its conduct." *Wholers*, 969 P.2d at 956 (emphasis added, internal quotation marks omitted). When an insurance company's actions under the contract are reasonable, there can be no basis for concluding that the insurance company acted in bad faith. *See Am. Excess Ins. Co.*, 729 P.2d at 1354-55. Polymer provides no evidentiary support for its speculative allegation that the adjuster had a conflict of interest in adjusting the claims of both Polymer and its landlord. There is no evidence that the adjuster purposefully prevented Polymer from relocating, much less that he did so in order to benefit the landlord. Therefore, the district court properly granted summary judgment on this claim because there was no material issue of fact as to this claim created by any evidence presented by Polymer.

IV

The district court did not err in dismissing Polymer's claim for punitive damages. "Nevada follows the rule that proof of bad faith, by itself, does not establish liability for punitive damages." *United Fire Ins. Co.*, 780 P.2d at 198. To prevail on its claim for punitive damages, Polymer must prove "by clear and convincing evidence" that Hartford "has been guilty of oppression, fraud or malice, express or implied." Nev. Rev. Stat. 42.005(1). The common law definitions of

7

oppression, fraud, and malice apply in bad faith suits. Nev. Rev. Stat. 42.005(5).

Oppression occurs when the plaintiff is subjected to "cruel and unjust hardship in conscious disregard of his rights." *Ainsworth v. Combined Ins. Co. of Am.*, 774 P.2d 1003, 1012 (Nev. 1989) (internal quotation marks and citations omitted), *abrogated on other grounds by Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596 (1998).  Malice refers to conduct which is intended to injure a person or despicable "conduct which is engaged in with a conscious disregard of the rights or safety of others."  Nev. Rev. Stat. 42.001(3).[1]

The standard for punitive damages is much more stringent than that for bad faith.  Since Polymer failed to provide evidence creating a material issue of fact regarding the bad faith claims, then it clearly failed to meet the standard for punitive damages. Polymer's challenge is based upon the same inferences and lack of evidence as its earlier arguments, and even if all the allegations made by Polymer are true, Hartford's conduct does not rise close to the level of oppression, fraud, or malice.  The district court correctly dismissed the claim.

V

---

[1]This statutory definition applies because it a codification of the common law definition of malice found in *Granite Construction Co. v. Rhyne*, 817 P.2d 711 (Nev. 1991).  *Coughlin v. Tailhook Ass'n*, 112 F.3d 1052, 1055-56 (9th Cir. 1997).

Polymer challenges the district court's refusal to give the following proposed jury instruction:

> The damages claimed by Polymer Plastics Corporation for Hartford Casualty Insurance Company's alleged breach of the implied covenant of good faith and fair dealing fall into two categories called economic damages and noneconomic damages. You will be asked on the verdict form to state the two categories of damages separately.

The district court refused to give the requested instruction, holding that none of the other damage instructions included a breakdown between economic and noneconomic[2] damages and Nevada case law cited by Polymer did not support an award of noneconomic damages to a corporation. Instead, the district court gave a general damages instruction that did not separate out different types of damages.

*Hilton Hotels v. Butch Lewis Prods., Inc.*, 862 P.2d 1207 (Nev. 1993), does not provide the necessary support for Polymer's desired jury instruction. *Hilton Hotels* merely stands for the proposition that if a corporation successfully proves that the implied covenant of good faith and fair dealing was breached, the jury will then be free to also determine whether the breach resulted from tortious acts of conspiracy and interference. 862 P.2d at 1210. Its only mention of damages is the

---

[2]Noneconomic damages may include "damages to compensate for pain, suffering, inconvenience, physical impairment, disfigurement and other nonpecuniary damages." Nev. Rev. Stat. 41A.011.

following: "If Hilton's threshold claim and tort claims survive jury scrutiny, Hilton may, depending upon an express finding of satisfaction of the statutory requisites, also seek an award of punitive damages." *Id.* at 1211.

First, any tort damages, which are what Polymer appears to consider "general" damages, are actually separate from Hilton's claim of breach of the implied covenant of good faith and fair dealing, since Hilton had separate underlying tort claims. Polymer, on the other hand, does not raise any tort basis for the violations of the implied covenant of good faith and fair dealing that it is alleging. Therefore, it is unclear the premise of *Hilton* is actually applicable at all. Second, Polymer makes several assumptions in its argument that are not supported by its case law. Polymer argues that if a corporation can recover tort damages, it can also recover general damages. The cases cited by Polymer to support the proposition a corporation can recover general damages are unavailing.

Polymer then argues that since general damages are comprised of economic and noneconomic damages, it is logical to conclude that if a corporation is entitled to recover general damages, it can also recover economic and noneconomic damages. Polymer cites to no cases to support the proposition. The arena of libel and libel per se is inapplicable here since the considerations undergirding the award of general damages in those cases does not exist in bad faith cases. The law

10

simply does not support Polymer's requested jury instruction, and the district court did not commit reversible error in giving the instruction and declining to give the instruction offered by Polymer.

**AFFIRMED.**