Susan M. AUSTIN, Appellant,

v.

**CUNA MUTUAL LIFE INSURANCE CO. d/b/a Cuna Mutual Insurance Society, Appellee.**

No. 98–934.

Supreme Court of Iowa.

Dec. 22, 1999.

Richard L. Anderson and Robert S. Lannin of Croker, Huck, Kasher, Dewitt, Anderson & Gonderinger, P.C., Omaha, NE, and Joel J. Yunek of Laird, Heiry, McManigal, Winga, Duffy, Stambaugh, P.L.C., Mason City, for appellant.

Barbara A. Hering and Elizabeth A. Nigut of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, CADY, and HARRIS,* JJ.

LARSON, Justice.

The plaintiff's fourteen-year-old daughter, Rachel, died during surgery to repair a defective aorta. The plaintiff had an accidental death policy with CUNA Mutual Insurance Company, which refused to pay accidental death benefits. The district court granted summary judgment against the plaintiff, who appealed. We affirm.

### I. *Facts and Proceedings.*

The summary judgment record shows these undisputed facts. Rachel suffered from subaortic, aortic, and supra-aortic stenosis, which is a multilevel narrowing of the aorta or its orifice due to lesions of the wall with scar formation. Rachel underwent aortic root replacement surgery at the University of Iowa Hospitals. Dr. Ralph Delius, one of the surgeons, advised Mr. and Mrs. Austin that the surgery had a five percent mortality rate. Due to Rachel's prior operations, the doctors encountered extremely fragile tissue and uncontrollable bleeding during the surgery,

---

* Senior judge assigned by order pursuant to Iowa Code section 602 .9206 (1999).

resulting in Rachel's death. Dr. Delius had performed this surgery fifteen to twenty times, and this was his first fatality.

The plaintiff made a claim for accidental death benefits. CUNA denied it on the basis that Rachel's death was not accidental within the meaning of the policy. The plaintiff filed suit, and both parties moved for summary judgment. Austin's motion was denied, and CUNA's motion was granted.

## II. *Policy Coverage.*

 Interpretation of an insurance policy, including resolution of disputed coverage, is ordinarily a legal matter to be reviewed on error. *Stine Seed Farm, Inc. v. Farm Bureau Mut. Ins. Co.*, 591 N.W.2d 17, 18 (Iowa 1999). When neither party offers extrinsic evidence on the meaning of policy terms, the issue is one of law for the court. *See Connie's Constr. Co. v. Fireman's Fund Ins. Co.*, 227 N.W.2d 207, 210 (Iowa 1975). This is the case here; neither party offered extrinsic evidence on the meaning of the key word, "accident."

 The policy provided that CUNA would pay specified amounts ($20,000 as to Rachel) "[i]f an Insured Person sustains a loss within 365 days after the date of an accident. . . ." A loss is defined as an "injury which results in Loss of Life or bodily injury of an Insured Person. . . ." Injury is defined by the policy as "any bodily harm caused by an accident occurring while the Policy is in force as to the Insured Person and resulting directly and independently of all other causes of Loss." The policy, however, does not define "accident."

Accident has been defined as

an event or condition occurring by chance or arising from unknown or remote causes . . . [;] lack of intention or necessity: chance—often opposed to *design* . . . [;] a usu. sudden event or change occurring without intent or volition through carelessness, unawareness,

ignorance, or a combination of causes and producing an unfortunate result . . . [;] an unexpected medical development esp. of an unfavorable or injurious nature occurring in apparently good health or during the course of a disease or a treatment. . . .

Webster's Third New International Dictionary 11 (unabr. ed. 1986). Accidental death is defined as a "death by accidental means usu. sudden and violent. . . ." *Id.* An accidental means is "an act or event preceding harm or damage to an insured that is sudden, unexpected, and not intended or designed by any person." *Id.*

In *Weber v. IMT Insurance Co.*, 462 N.W.2d 283 (Iowa 1990), the issue was whether the spilling of hog manure on a public road was "accidental." In that context, we decided an accident was "an event which, under the circumstances, is unusual and unexpected. . . ." *Weber*, 462 N.W.2d at 287 (citation omitted). Because of the context of that case, its definition of accident is not particularly helpful in this case. *Weber*'s "unusual and unexpected" definition of accident as applied to a death case would mean that virtually any untimely death could be construed to be accidental. In *Central Bearings Co. v. Wolverine Insurance Co.*, 179 N.W.2d 443 (Iowa 1970), we approved a definition of accident that is more pertinent to the present case because it connotes an element of suddenness and force:

"The word 'accident', as used in insurance policies, has frequently been defined as '. . . an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. . . .' . . . As used in this policy . . . , we think [accident] clearly implies a misfortune with concomitant damage to a victim, and not the negligence which eventually results in that misfortune."

*Central Bearings Co.*, 179 N.W.2d at 448 (quoting *Century Mut. Ins. Co. v. Southern Arizona Aviation, Inc.*, 8 Ariz.App.

384, 446 P.2d 490, 492 (1968) (citations omitted)).

In *Lickleider v. Iowa State Traveling Men's Ass'n*, 184 Iowa 423, 166 N.W. 363 (modified at 184 Iowa 423, 168 N.W. 884) (1918), the insured died following his attempt to repair a tire that suddenly came off of the rim, causing him to "slip or stagger back." He turned pale and died in about an hour. *Lickleider*, 184 Iowa at 425, 166 N.W. at 364–65. The issue was whether his death was accidental within the meaning of the policy. We said:

> [W]e confront again the oft-recurring inquiry: What is an accident? [A]nd when is a means or cause accidental, within the meaning of the contract? It is not always easy to define a word, though one of familiar, common, and daily use, in other words or terms which shall at once be so clear, accurate, and comprehensive as to be everywhere and always applicable.... One thing, at least, is well-settled: the words "accident" and "accidental" have never acquired any technical meaning in law, and, when used in an insurance contract, they are to be construed and considered according to the common speech and common usage of people generally.... It is an event from an unknown cause, or an unexpected event from a known cause; a thing done or disaster caused without design or intention; an unusual and unexpected result attending the performance of a usual or necessary act.... The list could be extended quite indefinitely; but it can hardly be denied that these authorities, cited from courts and writers of the highest standing, make it clear that the meaning of these words in law differs in no essential respect from the meaning attributed to them in popular speech.

*Id.* at 427 29, 166 N.W. at 365–66 (citations omitted). In a Florida case, the court advocated a practical approach in defining accident:

> This court has previously addressed the standards to be applied in cases of this ilk. In *Braley v. American Home Assurance Co.*, [354 So.2d 904, 905 (Fla.

Dist.Ct.App.1978),] this court aligned itself with those courts which utilize a "man-on-the-street" test when the term "accident" is not defined in the policy. That test requires the finder-of-fact to consider the facts of the particular case as viewed through the eyes of the average, everyday "man-on-the-street."

*Beneficial Standard Life Ins. Co. v. Forsyth*, 447 So.2d, 459, 461 (Fla.Dist.Ct.App. 1984).

Courts in other jurisdictions have reached differing results in applying "accident" language in analogous fact situations. *See, e.g.*, 10 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 141:79, at 141–114, 141–115 (3d ed.1997) [hereinafter Couch]; Kristine Cordier Karnezis, Annotation, *Death During or Allegedly Resulting from Surgery as Accidental or from Accidental Means Within Coverage of Health or Accident Insurance Policy*, 91 A.L.R.3d 1042, 1045–47, 1051–53, 1055–56 (1979 & Supp.1999). The Seventh Circuit, fashioning federal common law under the Employee Retirement Income Security Act (ERISA), offered this pragmatic view:

> Any time one undergoes a medical procedure there is a risk that the procedure will inflict an injury, illustrating the adage that "the cure is worse than the disease." The surgeon might nick an artery; might in fusing two vertebrae to correct a disk problem cause paraplegia; might in removing a tumor from the patient's neck sever a nerve, so that the patient could never hold his head upright again. A simple injection will, in a tiny fraction of cases, induce paralysis. An injection of penicillin could kill a person allergic to the drug. A blood transfusion can infect a patient with hepatitis or AIDS. All these injuries are accidental in the sense of unintended and infrequent. But they are not "accidents" as the term is used in insurance policies for accidental injuries. The term is used to carve out physical injuries not caused by illness from those that are so caused, and while injuries caused not by the illness itself but by the treatment of the illness could be put

in either bin, the normal understanding is that they belong with illness, not with accident.

*Senkier v. Hartford Life & Accident Ins. Co.,* 948 F.2d 1050, 1051–52 (7th Cir.1991).

We believe the better rule, which is consistent with a "person on the street" view that intrasurgical deaths are not accidents for insurance purposes, is stated by one insurance authority:

> When the insured undergoes medical treatment for the purpose of curing a disease or other unhealthy or abnormal condition which has not itself been produced by a covered accident, the mere fact that the insured dies or is injured as the result of such treatment does not bring the loss within the coverage [of the policy]. . . .

Couch § 141:79, at 141–114 (footnotes omitted). We approve that rule here.

The trial court properly granted summary judgment against the plaintiff on her claim.

**AFFIRMED.**