**WESTFIELD INSURANCE COMPANIES, Appellant,**

**v.**

**ECONOMY FIRE & CASUALTY COMPANY and Universal Underwriters Insurance Company, Appellees,**

**and**

**Empire Fire & Marine Insurance Company, Defendant.**

No. 99–0460.

Supreme Court of Iowa.

March 21, 2001.

Iowa Code section 602.9206 (1999).

---

* Senior judge assigned by order pursuant to

J. Michael Weston, James P. Craig, and Brenda K. Wallrichs of Moyer and Bergman, P.L.C., Cedar Rapids, for appellant.

Michael P. Byrne and Cameron A. Davidson of Lane & Waterman, Davenport, for appellee Economy Fire & Casualty Co.

John M. Bickel and Theresa C. Davis of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee Universal Underwriters Insurance Co.

SNELL, Justice.

This is an appeal by plaintiff, Westfield Insurance Companies (Westfield), from an adverse summary judgment. The issue before the district court was how to assess liability among several insurance companies for money damages paid in settlement to an injured driver. The injured driver was involved in a car accident where multiple insurance companies provided coverage. The district court held that Westfield, as primary insurer, was liable for payment of all the money damages paid to the injured driver. Westfield claims the district court erred in failing to apply a pro rata standard to assess liability. We reverse and remand for further proceedings.

## I. Factual Background and Proceedings

A simple car accident involving two private citizens has turned into a six-year dispute between multiple insurance companies. The actors involved in the accident are nearly irrelevant to this determination, but some background information is helpful to put the issue in context.

Dr. Andrew Edwards was an employee of Bettendorf Medical Center (Bettendorf) in 1993. Because his car was receiving some necessary repairs, he needed a rental car. Bettendorf rented a car for Edwards's use during this time. While driving this rental car, Edwards was involved in a collision with Chamein Clark–Melroy. It was her lawsuit to recover damages that precipitated the legal issue before us today. She sued jointly Edwards, Bettendorf, the rental car company, and the company from whom the rental company leased the car. She received a settlement of $382,000.

(1) Edwards was insured by Economy Fire & Casualty Company (Economy) with a $100,000 policy limit. The settlement agreement provided that Economy pay $102,000 of the settlement amount. Economy reserved the right to adjudicate the appropriateness of its payment of this amount. Economy is an *appellee* in the present case.

(2) Bettendorf was insured by Westfield with a $1,000,000 policy limit. The settlement agreement provided that Westfield pay the remaining balance of damages equaling $280,000. Westfield also reserved the right to adjudicate the appropriateness of its payment of this amount.

(3) Dollar–Rent–A–Car (Dollar) rented the car involved in the accident to Bettendorf for Edwards's use. It was insured by Empire Fire & Marine Insurance Company (Empire) with a $50,000 policy limit. Empire was not assessed any portion of the money damages in the settlement. Empire is not involved in this appeal.

(4) Dollar leased the car in question from Bi–State Leasing, Incorporated (Bi–State). Bi–State was the actual owner of the car. Bi–State was insured by Universal Underwriters Insurance Company (Universal) with a $500,000 policy limit. No damages were allocated to Universal under the settlement. Universal is an *appellee* in the present suit.

Following the settlement, Westfield sought reimbursement for the amount it paid from the other three companies. The suit and counterclaim between Empire and Westfield has been settled. Universal counterclaimed against Westfield seeking to remain free from liability for any damages. Economy also counterclaimed against Westfield alleging Economy should be reimbursed by Westfield for the amount Economy paid in settlement. Nu-

merous other counterclaims not relevant here were filed. At all points, Westfield denied sole liability. A motion to adjudicate law points was filed by all four insurance companies, seeking a district court determination of what each competing policy covered. Specifically, Westfield sought a pro rata share ruling for the settlement and a finding that every policy involved provided excess coverage because all contained an excess clause.

The adjudication of law points ruling issued by Judge Sivright found Westfield was the primary insurer. As such, it was liable for the entire amount up to its policy limits. With a $1,000,000 policy limit, Westfield was liable for all $382,000. Although all four policies contained an excess insurance clause, the court found that Westfield remained the primary insurer because of additional language in its policy, specifically, a hired auto endorsement.

Economy, Empire, and Universal sought summary judgments in their favor. Economy also sought reimbursement of the $102,000 it had originally paid from Westfield. After an unsuccessful attempt to secure an interlocutory appeal, Westfield filed its own motion for summary judgment despite the adverse adjudication of law points ruling.

In February of 1999, the district court, Judge Nahra presiding, granted summary judgment in favor of Economy, Empire, and Universal. It also held Economy must be reimbursed by Westfield for the entire portion it had paid in settlement. All other counterclaims were granted in the opposing sides' favor. In its resistance to the other insurance companies' motions for summary judgment, Westfield argued that the district court's ruling on the adjudication of law points motion was in error. Specifically, Westfield charged the district court with applying an improper contribution standard in order to find that Westfield was the primary insurer. The dis-

trict court held that such a claim should have been addressed in a motion to modify the adjudication of law points ruling, not a resistance to a summary judgment motion. Thus, the court considered this issue inappropriate for its review.

The contribution formula which the district court would not address in its summary judgment ruling is now the subject of this appeal. Westfield argues every policy involved in the present appeal contains an excess clause. Westfield seeks a ruling that the pro rata formula is implicated under these circumstances. Economy and Universal argue that because Westfield is the only primary insurer, its policy must first be exhausted before it can seek contribution from the other insurance companies. Universal also argues the district court erred in its adjudication of law points by finding Universal provided any insurance at all under these facts.

We are asked to determine whether Westfield's policy language can be construed as providing primary coverage or excess coverage. We must also decide, if the policy provides excess coverage, whether this court should force the remaining insurance companies to split the settlement cost on a pro rata basis.

## II. Scope and Standard of Review

We review the interpretation of the language of an insurance policy for correction of errors at law. *Austin v. CUNA Mut. Life Ins. Co.*, 603 N.W.2d 577, 578 (Iowa 1999). "Interpretation of an insurance policy, including resolution of disputed coverage, is a legal matter which we review on error." *Stine Seed Farm, Inc. v. Farm Bureau Mut. Ins. Co.*, 591 N.W.2d 17, 18 (Iowa 1999); *Ottumwa Hous. Auth. v. State Farm Fire & Cas. Co.*, 495 N.W.2d 723, 726 (Iowa 1993). Due to the nature of an insurance policy, the benefit of the doubt in the drafting is interpreted against the insurance compa-

ny. *LeMars Mut. Ins. Co. v. Joffer*, 574 N.W.2d 303, 307 (Iowa 1998). As such, limits in "coverage are construed strictly against the insurer." *Id.*

Similarly, we review a grant or denial of a motion for summary judgment at law. Iowa R.App. P. 4; *Krause v. Krause*, 589 N.W.2d 721, 724 (Iowa 1999). In such cases, we determine whether the district court correctly applied the law. *Krause*, 589 N.W.2d at 724. In that regard, "[s]ummary judgment is properly granted if the only controversy concerns the legal consequences flowing from undisputed facts." *Diggan v. Cycle Sat, Inc.*, 576 N.W.2d 99, 102 (Iowa 1998). "Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Joffer*, 574 N.W.2d at 306. In the present case, we review the record in the light most favorable to Westfield as the nonmoving party. *Id.*

Moreover, an appeal challenging the district court's "adjudication of law points is confined to a determination of legal matters on uncontroverted pleadings." *Mortensen v. Heritage Mut. Ins. Co.*, 590 N.W.2d 35, 38 (Iowa 1999); *see* Iowa R. Civ. P. 116. As such, our standard of review for an adjudication of law points is on errors at law. Iowa R.App. P. 4; *Mortensen*, 590 N.W.2d at 38. A party need not move to amend this ruling to be able to challenge it on appeal. Iowa R. Civ. P. 179(b).

We have previously held that when the adjudication of law points determines the ruling on a motion for directed verdict, the former ruling may be reviewed on appeal of the latter. *Powell v. Khodari–Intergreen Co.*, 334 N.W.2d 127, 130–31 (Iowa 1983). The same is true when the adverse adjudication of law points ruling is the basis for the grant of a motion for summary judgment. *Caniglia v. Lary*, 366 N.W.2d 548, 549–50 (Iowa 1985). When

the summary judgment motion is not decided on a discussion of the presence or absence of material issues, but based solely on a former adjudication of law points, review on appeal of the prior ruling is unavoidable. *Id.; Powell*, 334 N.W.2d at 130.

## III. Issue on Appeal

We have before us the language from three policies from three different insurance companies. The district court concluded that the language of the Westfield policy provided primary coverage, while the others were limited to excess coverage. The district court recognized that the Westfield policy also had an excess coverage provision, but determined this provision was secondary to the primary coverage the policy provided. Westfield has appealed this interpretation.

Specifically, Westfield alleges the district court applied the "closer to the risk" doctrine to find Westfield was the primary insurer. Westfield argues this was error given our recent decision in *Illinois National Insurance Co. v. Farm Bureau Mutual Insurance Co.*, 578 N.W.2d 670 (Iowa 1998). Whether the district court applied this prohibited doctrine is something we must first address prior to discussing Westfield's second claim that the pro rata share rule should govern this decision.

### A. The District Court Analysis

We have recently held that our courts should apply the pro rata distribution rule in situations where there are conflicting excess insurance provisions. *Illinois Nat'l*, 578 N.W.2d at 673. This is not true where one insurance company provides primary insurance and the remaining companies provide excess insurance. In the present case, the three disputed policies each contain an excess insurance provision. The dispute here concerns the district court's determina-

tion that the Westfield policy provides primary insurance such that the pro rata share rule would only be implicated when its limits are exhausted. Westfield asks us to reverse this determination under the rationale that the court impermissibly applied the closer to the risk rule to determine it was a primary insurer.

The closer to the risk rule was adopted by the courts in Minnesota. *Interstate Fire & Cas. Co. v. Auto–Owners Ins. Co.,* 433 N.W.2d 82, 86 (Minn.1988). Specifically, this rule provides that whichever excess insurer's coverage more particularly contemplates the present incident is the primary insurer for dispute purposes. *Id.* There are three factors utilized by the court to determine which policy is closer to the risk. *Id.; see also Illinois Nat'l,* 578 N.W.2d at 673 (detailing the Minnesota approach). (1) Which policy, if any, particularly mentions the accident-causing instrumentality? *Interstate Fire,* 433 N.W.2d at 86. (2) Which premium suggests it provides broader coverage? *Id.* (3) Does any disputed policy contemplate the risk at issue, if so, which policy's language is the most specific? *Id.*

In *Illinois National* we compared Minnesota's rule with Iowa's pro rata approach, and held that we "prefer to apply our own rule." *Illinois Nat'l,* 578 N.W.2d at 673. The reason for this conclusion is:

> For one thing[,] the [pro rata] rule … is clear and easy to apply. Assessing which policy is closer to the risk would often be a tricky business, and would be a fertile field for much dispute and litigation. Coverage of losses by an unrelated policy, might, as it does here, lead to a surprising result in view of a modest premium charge. But we do not think it follows that we should therefore fail to apply a clear and workable rule.

*Id.*

The district court in the instant case did not expressly mention the three fac-

tors used by the Minnesota court in its determination. Moreover, it is not readily apparent what formula the court utilized except to look at the language of the Westfield policy and determine the hired auto endorsement specifically insured the present scenario. Although the Westfield policy also contained an excess insurance clause, the district court found the hired auto endorsement "provided coverage for risks not covered by the employees' primary auto insurance." As such, if the excess clause were to trump the hired auto endorsement, the district court reasoned this would "impinge[ ] upon the insureds' right to expect full coverage for liability arising from non-owned hired autos in the course of their employment." The court concluded that the policy provided protection for the uncovered, additional risk of renting a car. "Therefore, the Westfield policy should be categorized as primary insurance for such additional risks."

The district court placed much emphasis on the fact that the Westfield policy has a broader coverage base. Unlike the other policies, it contains a hired auto liability endorsement provision. This provision states: "The insurance provided … applies to 'bodily injury' or 'property damage' arising out of the maintenance or use of a 'hired auto' by you or your employees in the course of your employment." Hired auto is described as "any 'auto' you lease, hire or borrow" from a nonemployee. No where in the endorsement does it state it provides primary coverage. Moreover, the Westfield excess insurance provision purports to apply to the entire policy.

Westfield argues that the district court's use of the hired auto endorsement as proof that Westfield provides primary insurance actually applies the closer to the risk rule rejected by our court in *Illinois National.* We agree. On closer inspection, we believe the district court used this endorsement to find Westfield provided primary

coverage because (1) the policy particularly mentions the accident-causing instrumentality by way of the endorsement, and (2) the policy more specifically contemplates the risk at issue. These reasons are two factors out of the three that make up the closer to the risk rule.

Without weighing the specificity of Westfield's policy against the others, each policy provides basic auto coverage. The hired auto endorsement does not state it provides primary coverage. As such, the excess clause should govern. We find the district court used an improper standard for allocating loss because it ranked specificity over the presence of the excess clause. The district court's analysis is consistent with the closer to the risk formula and cannot be upheld.

### B. Excess Clauses in Each Policy

■ The district court should have applied the pro rata distribution standard. Our court reaffirmed the pro rata approach for situations involving dueling excess insurance providers in *Illinois National. Id.* The rule recognized in Iowa was first espoused in 1969. *Truck Ins. Exch. v. Maryland Cas. Co.,* 167 N.W.2d 163 (Iowa 1969). The court held: "As a general rule, when two insurance companies provide insurance on the same loss, the question of their respective insurance obligations is determined by construction of the language used by the respective insurers. . . ." *Id.* at 164. When the disputed policies contain excess clauses, those excess clauses cannot exist without a primary insurance coverage, and the loss must be shared proportionately. *Id.* Put another way,

if two polices purport to afford only excess insurance, there can be no primary coverage. Without primary coverage neither policy can operate as a policy of excess insurance. Because the excess provision would thus be rendered inoperative, the general coverage of each policy must apply on a prorated basis.

*Illinois Nat'l,* 578 N.W.2d at 672 (citing *Truck,* 167 N.W.2d at 164–65). Here, because the Westfield policy provides excess coverage only, it can only be forced to pay its proportionate share of the loss.

There is no dispute that the Economy policy does not provide primary coverage for non-owned vehicles. Its policy reads: "[A]ny insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance." As such, it is an excess insurer and liable for a pro rata share of the cost of settlement negotiated by it and Westfield.

■ The Universal policy also contains an excess insurance clause. Under its general conditions it states: "[T]his insurance is excess over any other insurance. . . ." Under the auto portion of the policy the language reads: "The insurance afforded by this Coverage Part is primary, except it is excess . . . while the OWNED AUTO . . . is in the care, custody, or control of any person or organization other than YOU." This language clearly indicates primary coverage does not exist for vehicles owned by Bi–State in the care of others. Although Universal now argues it provides no coverage at all under these circumstances, if we find that it does, the most it provides is excess coverage.

We find the three insurance policies each provide excess insurance. The court impermissibly used specificity in policy language to find Westfield provided primary coverage in its adjudication of law points. Judge Nahra was not at liberty to question the validity of the adjudication of law points because it was a final ruling. Iowa R. Civ. P. 116 (original version at Iowa R. Civ. P. 105); *see also Bruner v. Varley,* 411 N.W.2d 150, 154–55 (Iowa 1987) (finding an adjudication of law points is "a final order becoming the 'law of the case' in all further proceedings in the ab-

sence of an appeal" (citation omitted)). While the district court was correct in applying the previous ruling when it made the summary judgment determination, summary judgment based upon an erroneous adjudication of law points cannot stand. *Bruner*, 411 N.W.2d at 155 ("[W]e are not bound by the erroneous ruling on appeal."). The district court did not apply the pro rata standard as enunciated in *Illinois National.* This was error. When competing insurance policies contain excess clauses, each is repugnant to the others, and the loss should be prorated.

### C. The Universal Policy Coverage Exclusion

Because the loss should be prorated among the remaining insurance providers which provide coverage, we must determine now whether Universal provides coverage, such that it must contribute proportionately. If not, the pro rata share must be absorbed by Westfield and Economy. Universal argues that given exclusionary language in the Universal policy, it does not provide any coverage to Bi–State, its insured, under these circumstances. In the adjudication of law points ruling, the district court dismissed the exclusionary language in the policy as contravening the intent of Bi–State to seek insurance for its vehicles used in its business. The court then found that Universal was liable to Bi–State as an excess insurer. On appeal, Westfield argues Universal should be estopped from denying coverage because it failed to deny coverage during the settlement proceedings and discovery.

### 1. Estoppel

 Westfield argued in its motion to adjudicate law points filed in the district court that Universal was estopped to deny coverage because Universal had defended its insured, Bi–State, without reserving its

rights, and Bi–State had admitted in answers to interrogatories that coverage for the accident was provided by Universal. To support its motion, Westfield relied on the doctrine of estoppel by acquiescence and our decision in *American Family Mutual Insurance Co. v. Allied Mutual Insurance Co.*, 562 N.W.2d 159, 165 (Iowa 1997).

 We have held "that while a forfeiture of benefits contracted for may be waived, the doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." *Pierce v. Homesteaders Life Ass'n,* 223 Iowa 211, 217, 272 N.W. 543, 546 (1937); *accord Richardson v. Iowa State Traveling Men's Ass'n,* 228 Iowa 319, 328, 291 N.W. 408, 412 (1940) (holding the doctrine of estoppel cannot "create by waiver a contractual liability not contained in the policy itself"); *see also City of Carter Lake v. Aetna Cas. & Sur. Co.,* 604 F.2d 1052, 1059 (8th Cir.1979) ("Iowa follows the general rule that the doctrine of estoppel may not be used 'to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom.'" (quoting *Randolph v. Fireman's Fund Ins. Co.,* 255 Iowa 943, 950, 124 N.W.2d 528, 532 (1963))). There is, however, a well-recognized exception to this rule: "[W]hen an insurance company assumes the defense of an action, with knowledge actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." *City of Carter Lake,* 604 F.2d at 1059 (applying Iowa law). The court in *Carter Lake* noted that there was some "authority for the proposition that prejudice is presumed from undertaking the defense of an action without a reservation of rights or, alternatively stated, that the loss of control of one's own

case is itself prejudice." *Id.* at 1061. Nonetheless, the court did not rely on a presumption of prejudice in concluding that the insurer was estopped. Instead, the court identified specific ways in which the insured was harmed by the insurer's delay in denying coverage. *Id.* at 1061–62.

The doctrine of estoppel by acquiescence upon which Westfield relies does not fall within the exception to the general rule identified in the *Carter Lake* case. Although this doctrine bears an "estoppel" label, it is, in reality, a waiver theory. We have held that this doctrine applies "'where a person knows or ought to know that he is entitled to enforce his right ... and neglects to do so for such a length of time as would imply that he intended *to waive or abandon* his right.'" *Anthony v. Anthony*, 204 N.W.2d 829, 834 (Iowa 1973) (emphasis added) (quoting *Humboldt Livestock Auction, Inc. v. B & H Cattle Co.*, 261 Iowa 419, 432, 155 N.W.2d 478, 487 (1967)). Similarly, we have stated: "Estoppel by acquiescence is based on an examination of the ... actions [of the individual] who holds the right in order to determine whether the right has been *waived*." *Davidson v. Van Lengen*, 266 N.W.2d 436, 439 (Iowa 1978) (emphasis added). Under Iowa law, it is not necessary to prove prejudice to establish estoppel by acquiescence. *See id.* In contrast, the doctrine of equitable estoppel requires proof that the party alleging an estoppel relied on a false representation or concealment of material fact "to his prejudice and injury." *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 815 (Iowa 2000).

These cases indicate that the doctrine of estoppel by acquiescence is more akin to waiver than to equitable estoppel due to the absence of the justifiable reliance and prejudice elements. The exception to the general rule that coverage cannot be established by waiver or estop-pel is limited to equitable estoppel. Justifiable reliance and prejudice must be shown to estop an insurer from denying coverage. *See Bruns v. Hartford Accident & Indem. Co.*, 407 N.W.2d 576, 580 (Iowa 1987) (noting, in case alleging insurer was estopped to claim insured had forfeited coverage by failing to give notice, that person claiming estoppel "ha[d] not explained what elements compose[d] her estoppel cause of action," and then holding that person "must demonstrate justifiable reliance").

There is, nonetheless, a question as to the effect of our decision in *American Family*, 562 N.W.2d at 165. In that case, two insurers, American Family and Allied, potentially provided coverage for an alleged tortfeasor. *Id.* at 161. American Family assumed the defense and settled the tort claim. It then sought to recoup a portion of its payment from Allied. Allied successfully moved for summary judgment on the basis of estoppel by acquiescence. On appeal, our court held that the summary judgment could not be affirmed on the basis of estoppel by acquiescence. We stated that American Family had not neglected its right to seek indemnity or contribution against Allied for such time as would imply an intention to waive or abandon the right. *Id.* at 165.

It is significant to note that the court in *American Family* did not discuss whether, as a *legal* matter, the doctrine of estoppel by acquiescence was appropriately applied in this context. Moreover, no discussion of the doctrine of equitable estoppel was made as to its applicability to the claim of one insurer against another for contribution. We believe that in the case at bar the appropriate legal doctrine to apply to Westfield's claim against Universal is equitable estoppel. As such, Westfield must prove the elements of equitable estoppel to

successfully prevent Universal from denying coverage under its policy.

Therefore, we must examine the record to determine whether Westfield established justifiable reliance on Universal's representations to its prejudice as a matter of law. The estoppel issue was raised in Westfield's motion to adjudicate law points, not its motion for summary judgment. Consequently, there were no affidavits or other testimony submitted in support of Westfield's estoppel theory. In fact, Westfield did not even allege in its pleadings filed in connection with its motion to adjudicate law points or its motion for summary judgment that it justifiably and detrimentally relied on Universal's representations and actions with respect to Universal's coverage for the accident. This state of the record is fatal to Westfield's argument on appeal that judgment should be entered in its favor, whether this contention is considered under the requirements for a motion to adjudicate law points or under the requirements for summary judgment.

Westfield has made no showing that the uncontroverted pleadings establish its justifiable and detrimental reliance. In the absence of a showing that there is no genuine factual dispute with respect to Westfield's justifiable reliance and resulting prejudice, Westfield is not entitled to an adjudication of law points or summary judgment on the basis of estoppel.

## 2. Reasonable Expectations

The issue of reasonable expectations was raised in Westfield's motion to adjudicate law points. In that motion Westfield contended that Universal's policy provided coverage to Bi–State for the accident in question because the exclusion upon which Universal relied to deny coverage eliminated the dominant purpose of the policy issued to Bi–State. The district court

agreed, ruling that "[t]he doctrine of reasonable expectations supports a finding of coverage" and obligated the court to ignore the policy exclusion.

On appeal, Westfield argues that "[i]n making its coverage determination, the district court went beyond the specific terms of the policy and used extrinsic evidence to ascertain the reasonable expectations of the insured." Westfield contends, therefore, that the district court "made a finding of fact" that the Universal policy provided coverage and that this finding is binding on this court because it is supported by substantial evidence. To the extent that the district court did, in fact, resolve a contested issue of fact in ruling on the reasonable expectations issue, its decision was improper. A motion for adjudication of law points is not intended to be used to resolve factual disputes, but rather to determine "legal matters on uncontroverted pleadings." *Mortensen*, 590 N.W.2d at 38. As Westfield's argument illustrates, the issue of reasonable expectations is a factual matter, not a legal matter. Moreover, the record shows no uncontroverted pleadings establishing the factual predicates for application of the reasonable expectations doctrine.

Under the reasonable expectations doctrine

the objectively reasonable expectations of applicants and intended beneficiaries regarding insurance policies will be honored even though painstaking study of the policy provisions would have negated those expectations. The doctrine is carefully circumscribed and does not contemplate the expansion of coverage on a general equitable basis. It can only be invoked when an exclusion (1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction. *A preliminary criterion must*

*be satisfied before we apply the doctrine. The policy must either be such that an ordinary layperson would misunderstand its coverage, or there must be circumstances attributable to the insurer which would foster coverage expectations.*

*Krause,* 589 N.W.2d at 727 (emphasis added) (citations omitted). We note initially that the district court made no express determination that either of the preliminary criterion was satisfied before it proceeded to decide that the exclusion eliminated a dominant purpose of the policy. However, such a conclusion was apparently an unwritten premise of the court's ultimate decision that the doctrine of reasonable expectations applies. The question now is whether the district court correctly concluded that an ordinary layman would misunderstand the coverage provided by the policy or that the uncontroverted pleadings established "circumstances attributable to [Universal] which would foster coverage expectations." *See id.*

▮ The parties agree that the Universal policy includes coverage for "garage operations and auto hazard." This coverage requires Universal to pay

all sums the INSURED legally must pay as damages ... because of INJURY to which this insurance applies, caused by an OCCURRENCE arising out of GARAGE OPERATIONS or AUTO HAZARD.

Although the "auto hazard" includes coverage for the use of any auto owned by Bi–State and "furnished for the use of any person or organization," this coverage is limited by an exclusion for "INJURY arising out of the ... use ... of any ... AUTO, while ... leased or rented by YOU [Bi–State] to others." The only exception to this exclusion is for a lease or rental to Bi–State's "customers for a term of two

months or less when it temporarily replaces the CUSTOMER'S AUTO or when the customer is awaiting delivery of an AUTO purchased from [Bi–State]."

We do not think an ordinary layperson would misunderstand the exclusion; it clearly excludes coverage for leased vehicles unless the vehicle replaces a customer's current or soon-to-arrive auto for a lease period of two months or less. In the case at bar, Bi–State leased the vehicle in question to Dollar for a six-month period. An ordinary layperson, reading the exclusion and its exception, could not reasonably conclude that such a situation would be covered. Accordingly, Westfield has not established that "an ordinary layperson would misunderstand [the policy] coverage." *See id.*

The alternative prerequisite for the reasonable expectations doctrine is proof of circumstances attributable to the insurer that fostered coverage expectations on the part of Bi–State. There is nothing in the record indicating what coverage expectations Bi–State had.

Because the uncontroverted pleadings do not establish either of the preliminary criterion for application of the reasonable expectations doctrine, the district court erred in ruling, as a legal matter, that this doctrine prevented Universal from relying on its policy exclusion to deny coverage. Consequently, we reverse the district court's determination that Universal had coverage under its policy for Bi–State's liability.

The case is reversed and remanded for trial of the issue of Universal's liability to Westfield based on the principles of equitable estoppel and reasonable expectations and for determination of the pro rata share of the settlement damages to be assigned to Westfield, Economy, and Universal (if found to be liable).

**REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

NEUMAN, J., takes no part, and McGIVERIN, S.J.,* participates in place of CARTER, J., who takes no part.

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (1999).