# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 00-2978

_____

National Surety Corporation,       *
                                   *
    Plaintiff - Appellee,          *
                                   *    Appeal from the United States
v.                                 *    District Court for the
                                   *    Southern District of Iowa.
Ranger Insurance Company,          *
                                   *
    Defendant - Appellant.         *

_____

Submitted:  April 9, 2001

Filed:  August 13, 2001

_____

Before McMILLIAN and LOKEN, Circuit Judges, and GOLDBERG, Judge of the United States Court of International Trade, sitting by designation.

_____

LOKEN, Circuit Judge.

United Suppliers, Inc. ("United") suffered a loss of $1,806,738.09 when an above-ground storage tank collapsed at its Pacific Junction, Iowa facility, spilling liquid fertilizer. Responding to insurance claims, National Surety Corporation ("National") paid United $1,000,000, the policy limit under National's inland marine policy, which covered loss to liquid fertilizer from tank leakage or collapse. Ranger Insurance Company ("Ranger") paid United the remaining $806,738.09 of its total loss under Ranger's blanket property policy, which covered personal property including the liquid

fertilizer. The spilled fertilizer had salvage value, and each insurer received its pro rata share of the salvage recovery -- $163,509.17 to National and $131,905.35 to Ranger.

National then filed this action, seeking $787,737.33 in contribution from Ranger on the theory that Ranger owed 29/30 of the total loss when prorated between the two insurers on the basis of their respective policy limits. Ranger denied that claim and counterclaimed to recover the $163,509.17 salvage paid to National. Applying Iowa law, and deciding the case on the parties' joint fact stipulation, the district court[1] concluded that United's loss must be prorated between the two insurers because the policies contained mutually repugnant other-insurance clauses. The court then prorated the loss using the ratio of Ranger's overall policy limit of $30,000,000 to National's policy limit of $1,000,000. The result was a judgment in National's favor of $787,737.33 and dismissal of Ranger's counterclaim. Ranger appeals, arguing (1) the district court erred in prorating because Ranger's policy was excess to National's primary coverage, and (2) if proration is proper, the ratio should be based on Ranger's $1,000 sublimit for loss of liquid product resulting from "sudden breaking, failure or malfunction" of tanks, rather than the $30,000,000 overall policy limit. Construing the insurance policies and Iowa law *de novo*, we affirm. See St. Paul Fire & Marine Ins. Co. v. Missouri United Sch. Ins. Council, 98 F.3d 343, 345 (8th Cir. 1996) (standard of review).

1. The primary issue on appeal is whether the district court erred in prorating United's total loss between the two insurance carriers. Each policy covered at least part of the loss in question. But each policy contained an other-insurance clause limiting its coverage if the loss was also covered by another policy:

---

[1]The HONORABLE CHARLES R. WOLLE, United States District Judge for the Southern District of Iowa.

Commercial Property Condition G in Ranger's policy provided: "If there is other insurance covering the same loss or damage . . . we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance . . . ."

Loss Adjustment Provision 11 in National's policy provided: "The coverage provided by this policy shall apply only as excess insurance over any other valid and collectible insurance or coverage that applies to the covered property."

If these conflicting clauses were construed literally, the insured might have no coverage, an obviously unacceptable answer. See Union Ins. Co. v. Iowa Hardware Mut. Ins. Co., 175 N.W.2d 413, 417 (Iowa 1970). Instead, United as insured has been reimbursed for its total covered loss, as Iowa law requires. The issue remaining is how the conflicting other-insurance clauses affect the insurers' rights to contribution from each other. Ranger contends that its policy provided only excess coverage to National's primary coverage of losses from leaking storage tanks. National argues the district court properly prorated United's loss between the two insurers.

When faced with conflicting other-insurance clauses, some States apply a closer-to-the-risk doctrine, under which the insurer whose policy was issued "for the primary purpose of insuring the particular risk" is primarily liable for payment. 15 RUSS & SEGALLA, COUCH ON INSURANCE § 219:49, at 219-63 (3d ed. 1999). Under this standard, National's inland marine policy, with its specific coverage for tank leakage and collapse, might be closer to the risk of United's loss than Ranger's blanket property policy. But the Supreme Court of Iowa has rejected this doctrine. The general rule in Iowa is that, if two policies contain mutually repugnant other-insurance clauses, the clauses are set aside and the loss prorated between the two policies based on their available coverages. Illinois Nat. Ins. Co. v. Farm Bureau Mut. Ins. Co., 578 N.W.2d 670, 672 (Iowa 1998). The Supreme Court of Iowa, however, will not apply this rule if it is clear that one insurer provided primary insurance and the other provided

excess insurance. For example, an insurer that issued a "true excess" or "umbrella" policy is not liable for any portion of the loss until the primary insurer's policy limit has been exhausted, even if the primary policy contains an other-insurance clause. See Vigilant Ins. Co. v. Allied Prop. & Cas. Ins. Co., 609 N.W.2d 538, 541 (Iowa 2000); LeMars Mut. Ins. Co. v. Farm & City Ins. Co., 494 N.W.2d 216, 219 (Iowa 1992). But a closer-to-the-risk analysis may not be used in determining whether an insurer's coverage is primary or excess. See Westfield Ins. Cos. v. Economy Fire & Cas. Co., 623 N.W.2d 871, 876-78 (Iowa 2001) (en banc). Ranger seeks to fit within this primary/excess coverage exception to the proration rule.

Ranger first argues that its blanket property policy should be treated as a true excess policy, like the umbrella policies in Vigilant and LeMars. We disagree. True excess and umbrella policies *require* the existence of a primary policy as a condition of coverage. Their express purpose "is to protect the insured in the event of a catastrophic loss in which liability exceeds the available primary coverage." 15 COUCH § 220:32, at 220-37. By contrast, a blanket policy fully covers each item of property described in the policy. See 12 COUCH § 177.72, at 177-72. Thus, unlike a true excess policy, which only provides coverage above a predetermined level of primary coverage, a blanket policy provides primary coverage for each item of property covered. A blanket policy's coverage may become excess if the policy contains a valid other-insurance clause like Ranger's Condition G and there is other primary coverage. See 15 COUCH § 219.33, at 219-36. But when both the blanket policy and the other primary policy contain such other-insurance clauses, as in this case, Iowa law applies the mutually repugnant rule and prorates the loss between those insurers.

Ranger attempts to avoid the mutually repugnant rule by arguing that a "policy insuring intent" to layer its coverage as excess to National's may be inferred by comparing Ranger's blanket property coverage with National's specific coverage of losses from tank leakage. But in Westfield, the Supreme Court of Iowa reversed a decision based upon this type of analysis because it reflected the rejected closer-to-the-

risk doctrine. 623 N.W.2d at 877-78. After Westfield, we believe the Supreme Court of Iowa will limit its exceptions to the mutually repugnant rule to true excess policies, umbrella policies, and other situations where specific language in one policy or the other makes it clear that one coverage was excess to the other.

Ranger next argues there is this kind of specific language in another portion of its blanket policy. Paragraph 2(k) of the Building and Personal Property Coverage Form in United's Ranger policy provided:

> Covered Property does not include . . . [p]roperty that is covered under . . . any other policy in which it is more specifically described, except for the excess of the amount due . . . from that other insurance.

We agree that this provision seems to make Ranger's blanket coverage excess as to a specific type of property, unlike the above-quoted general other-insurance clauses. Because the Supreme Court of Iowa acknowledged that primary insurance "may be excess in certain, specified situations" in LeMars, 494 N.W.2d at 218 (quotation omitted), this may well be the kind of provision that, when applicable, would fall within the exception to the mutually repugnant rule as delineated in Westfield. But the question remains whether paragraph 2(k) is applicable because United's damaged property was "more specifically described" in National's policy. Ranger's policy covered "stock," which it defined to include "merchandise held for storage or for sale." National's policy covered "liquid fertilizer . . . and similar liquid property you own." Which is more specific? This fact-laden question was not addressed in the joint fact stipulation, it was not considered by the district court, and Ranger has not established that it was even raised in that court. In these circumstances, we conclude the Paragraph 2(k) issue was not preserved for appeal. Therefore, the district court properly applied the mutually repugnant rule and prorated United's loss between National and Ranger.

2. The district court prorated United's total loss on a 30:1 ratio based upon Ranger's $30,000,000 blanket policy limit and National's $1,000,000 policy limit.

Ranger argues that, for proration purposes, its applicable coverage must be based upon the following sublimit, which appears in the Additional Coverage section of the Causes of Loss - Special Form part of the Ranger policy:

> **Tank Leakage - $1,000 Limit.**  When loss of liquid product from within an aboveground tank occurs and the loss is the result of a sudden breaking, failure or malfunction of the tank or any of its apparatus, we will pay up to $1,000 for loss of the liquid product.

This is a perplexing issue.  We assume that the legal premise underlying Ranger's contention is correct -- the Supreme Court of Iowa would prorate based upon an *applicable* policy sublimit, rather than the overall policy limit.  See 15 COUCH § 217:9, at 217-21; Westhoff v. American Interins. Exch., 250 N.W.2d 404, 411-12 (Iowa 1977).  The question, then, is whether *every part* of United's loss that was covered by the Ranger policy fell within the $1,000 sublimit.  As to that question, the parties stipulated that United's loss was "lost stock from Tank 3 and Tank 5 at the United facility."  They further stipulated that National paid its policy limit "for loss of stock," and that Ranger "paid $806,738.09 toward the total loss suffered to stock."  Thus, the plain language of Ranger's tank leakage sublimit seems to apply to the entire loss.  However, Ranger paid United over $800,000.  More significantly, Ranger's Answer and Counterclaim specifically alleged that it was "*required* to pay" that amount "for its *covered* portion of this loss."  (Emphasis added.)

After the district court's initial adverse ruling, Ranger moved to modify the judgment, urging the court to more specifically consider this sublimit issue.  The parties submitted additional memoranda and argument, and the court then denied the motion, noting "that the arguments now presented in the motion to amend are inconsistent with the positions [Ranger] maintained in its pleadings."  We agree.  Ranger pleaded that it paid over $800,000 for a covered loss.  It now argues that the loss was subject to a

$1,000 sublimit, in effect, that the payment to United was gratuitous.[2]  "[F]actual statements in a party's pleadings are generally binding on that party unless the pleading is amended."  Knudsen v. United States, 2001 WL 704420, at *5 (8th Cir. June 25, 2001); see Missouri Hous. Dev. Comm'n v. Brice, 919 F.2d 1306, 1314-15 (8th Cir. 1990).  Here, that general rule should apply.  By pleading that it paid over $800,000 "for its covered portion of this loss," Ranger admitted an issue that was obviously relevant to National's claim for contribution, thereby lulling National into not pursuing discovery on the question of why Ranger paid its insured over eight hundred times what it appeared to owe under its Tank Leakage sublimit.  "[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible."  Soo Line R.R. v. St. Louis S.W. Ry., 125 F.3d 481, 483 (7th Cir. 1997).  Therefore, the district court did not err in prorating United's loss based upon the 30:1 ratio.

Ranger also appealed the dismissal of its counterclaim to recover $163,509.17 paid to National as its pro rata share of the liquid fertilizer salvage.  But Ranger concedes that its counterclaim was properly dismissed if, as we have concluded, the district court was correct in prorating United's loss between the two insurers using a 30:1 ratio.  Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2]At oral argument, counsel asserted that Ranger paid United as an "accommodation" to Ranger's broker.  Nothing in the record supports that assertion.

-7-