# IN THE COURT OF APPEALS OF IOWA

No. 19-0672
Filed November 30, 2020

**LORALEE FISHER,**
    Plaintiff-Appellant,

**vs.**

**PRINCIPAL LIFE INSURANCE COMPANY,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Johnson County, Andrew B. Chappell, Judge.

Loralee Fisher appeals the district court's entry of summary judgment. **AFFIRMED.**

L. Craig Nierman and Thomas E. Williams of Phelan Tucker Law LLP, Iowa City, for appellant.

Jesse Linebaugh and Angela Morales of Faegre Baker Daniels LLP, Des Moines, for appellee.

Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

The University of Iowa offered employees the chance to purchase insurance through Principal Life Insurance Company (Principal). During a period of open enrollment in 2017, employee Loralee Fisher purchased a dependent life insurance plan, making an initial premium payment of $12.71 in late 2017. The policy did not require proof of good health. The effective date of the policy was January 1, 2018.

Fisher's husband was staying at a hospital on January 1, 2018. He died on January 2, 2018.

Fisher applied for death benefits under the policy. Principal denied the claim, reasoning that Fisher's husband "was in a period of limited activity when his coverage became effective, which means he wasn't eligible for [l]ife insurance benefits." Specifically, he "was under inpatient care from 12/30/17 through his date of death. His [l]ife coverage woul[d have] begun on 1/1/18. Since he was hospital confined on this date, he was not eligible for the coverage."

Fisher filed an internal appeal, in which she asserted that if "Mr. Fisher was not eligible for the coverage and/or policy never took effect," the premium she paid "should have been refunded to her." In her view, because Principal "took and kept for more than three months the premium for a policy that never existed," the company "waived all rights to deny coverage." Principal denied the appeal.

Fisher sued Principal, alleging the company breached its contract, waived its right to rescind the policy, and acted in bad faith. She later amended the petition to add a claim of "reasonable expectations." Principal moved for summary

judgment. Following a reported hearing, the district court granted the motion on all four claims. Fisher appealed.

## I. *Breach of Contract*

As noted, Fisher signed up for life insurance during her employer's open enrollment period. The insurance policy authorized open enrollment, as follows: "An Open Enrollment Period will be available for any Member or Dependent every year who . . . failed to enroll . . . during the first period in which he or she was eligible to enroll; or during any previous Open Enrollment Period." The policy provided "[t]he effective date for any such individual requesting insurance during the Open Enrollment Period" was to "be the Policy Anniversary that next follows the date of completion of the Open Enrollment Period." "No Proof of Good Health [would] be required for Member or Dependent insurance purchased during the Open Enrollment Period."

As also noted, Principal's denial of Fisher's death-benefit claim turned on the fact that her husband was in a "period of limited activity." The policy defined that phrase as "[a]ny period of time during which a person is . . . confined in a Hospital for any cause or confined in a Nursing Facility." A provision on "Dependent Life Insurance" referred to the period of limited activity, as follows:

> If a Dependent spouse or Domestic Partner is in a Period of Limited
> Activity on the date Dependent Life Insurance . . . would otherwise
> be effective, such insurance . . . will not be in force for that Dependent
> spouse or Domestic Partner until the Period of Limited Activity ends.

Fisher argues the "the period of limited activity condition" did not apply to "policies purchased during an open enrollment period." The district court thoroughly addressed her argument as follows:

While it is true that the policy was slated to go into effect on January 1, 2018, the language of the policy does not exempt the new policyholder from the terms of the insurance originally signed up for. The Period of Limited Activity requirement was still in effect. The clear intent of this requirement is to delay the effective date, here January 1, 2018, until the insured is no longer hospitalized. Because Mr. Fisher was hospitalized (in a Period of Limited Activity) on January 1st, the effective date of the policy was delayed. Plaintiff also points to the language exempting the new policyholder from the Proof of Good Health requirement as evidence that the new policyholder is also exempt from the Period of Limited Activity requirement, but these are different provisions; exemption from the Proof of Good Health requirement is not exemption from the Period of Limited Activity requirement.

. . . Plaintiff argues that the absence of cross-references to the Period of Limited Activity requirement in the Open Enrollment article is a source of ambiguity because such cross-references are present in [other parts of the policy]. . . .

These cross-references, however, are necessary to impose the Period of Limited Activity requirement on Member Life Insurance, but are not necessary to impose the Period of Limited Activity requirement on Dependent Life Insurance. . . . Absent these [cross-references], the Period of Limited Activity requirement would not apply as it does not exist within the Member Life Insurance article. In contrast, the Period of Limited Activity requirement is integrated into Dependent Life Insurance—inclusion of the requirement in the Open Enrollment article would be redundant. In other words, the insurance policy need not cross-reference the Period of Limited Activity requirement to impose it on Dependent Life Insurance provisions because Dependent Life Insurance is already subject to said requirement . . . .

Plaintiff's [next] argument for interpretation of the contract in her favor is that section headings and sub-headings within the contract support [Mr.] Fisher's exemption from the Period of Limited Activity requirement. . . . But nothing in the section headings suggest an alteration to the terms of the Dependent Life Insurance at issue here. The Period of Limited Activity requirement is part and parcel to the Dependent Life Insurance article; this requirement is an integral part of the product Plaintiff purchased. Indeed, the product Plaintiff purchased during Open Enrollment was "Dependent Life Insurance" which is described in the correspondingly titled "Dependent Life Insurance" article. Therefore, the section headings do not alter the terms of the Dependent Life Insurance or give rise to any ambiguity therein.

The court determined the policy language was "unambiguous" and Fisher could not "prevail on her breach of contract claim." We discern no error in the district court's comprehensive analysis. *See Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501, 503–04, 507 (Iowa 2013) (using an "errors at law" standard for interpretation of an insurance policy and review of a summary judgment ruling; reading the policy "as a whole" and finding it "unambiguous"; and concluding the policy did "not provide coverage as a matter of law"). We affirm the court's grant of summary judgment to Principal on Fisher's breach-of-contract claim.

## II. *Reasonable Expectations*

"The reasonable expectations doctrine 'is a recognition that insurance policies are sold on the basis of the coverage they promise.'" *Id*. at 505 (citation omitted). "[T]he doctrine is carefully circumscribed." *Id*. at 506. "The doctrine is only invoked when an exclusion '(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction.'" *Id.* (citation omitted). "For the doctrine to apply, a prerequisite must first be satisfied. '*[T]he insured* must prove circumstances attributable to the insurer that fostered coverage expectations or show that the policy is such that an ordinary layperson would misunderstand its coverage.'" *Id.* (citation omitted). "[M]ost courts apply the doctrine of reasonable expectations as an interpretive tool where the language of a policy is deemed ambiguous," but the doctrine also has been applied "in its broader meaning as an independent and fundamental approach to insurance policy interpretation." *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903, 906 (Iowa 1973).

Fisher contends a reasonable person "would interpret the [p]olicy in such a way as to expect that no conditions would exist to limit the effective date of a policy purchased during the open enrollment period." The district court's analysis of the breach-of-contract claim essentially resolves this argument. The policy unambiguously incorporated the period of limited activity into dependent insurance policies purchased during the open enrollment period, and an ordinary layperson would not have misunderstood its applicability.

Fisher next contends it was her understanding "based upon the information provided to her during the open enrollment period, that the policy would be effective as of January 1, 2018." She asserts "Principal did not provide any information that there could be any circumstances that would cause the policy not to be effective on January 1, 2018." In fact, the policy itself provided the necessary information, and Fisher does not attest Principal made contradictory representations. *Cf. Grinnell Mut. Reinsurance Co. v. Voeltz*, 431 N.W.2d 783, 789 (Iowa 1988) (holding insurance company to its "manifested intent" and concluding "there was an agreement in accordance with what the [insured] reasonably expected").

We conclude the district court did not err in granting Principal's motion for summary judgment on Fisher's reasonable-expectations claim.

*III.* ***Waiver***

Fisher contends Principal's retention of the premium she paid in December 2017 constituted a waiver of the "period of limited activity" policy condition.[1] "The [waiver] theory applies where a party, knowing of an enforceable right, neglects enforcement for such a length of time that the law implies its waiver or abandonment." *Rubes v. Mega Life & Health Ins. Co.*, 642 N.W.2d 263, 272 (Iowa 2002) (citing *Westfield Ins. Cos. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 880 (Iowa 2001)). "[T]he doctrine of waiver or estoppel cannot be successfully invoked to create a liability for benefits not contracted for at all." *Westfield Ins. Cos. v. Econ. Fire & Cas. Co.*, 623 N.W.2d 871, 879 (Iowa 2001) (quoting *Pierce v. Homesteaders Life Ass'n*, 272 N.W. 543, 546 (Iowa 1937)).

After citing this precedent, the district court stated:

In Plaintiff's case, as decided above, the terms of the contract unambiguously established the effective date of the insurance policy, the date from which Principal would be liable, as either January 1, 2018, or the first day thereafter on which Mr. Fisher was not in a Period of Limited Activity. Principal's retention of the $12.71 premium for several months during the internal appeal process amounts only to retention during a period of "unresolved litigation" comparable to that in *Rubes*. The factual distinction between this case, *Pierce*, and *Rubes* (that Fisher's life insurance claim came to fruition before the effective date while the plaintiffs' claims in *Pierce* and *Rubes* came to fruition after they were no longer insured) is of no legal consequence; all that is important is that at the time the claim allegedly accrued none of the plaintiffs were actually insured under their respective policies.

The only proverbial "wrinkle" in this case is that after the premium had been refunded, a Principal employee emailed UI requesting that the premium once again be deducted from Fisher's pay—although the premium was refunded for a second time. Principal claimed in an email to the UI that this was the product of

---

[1] Fisher asserts the premium was not finally refunded until October 2018. Principal clarifies that the sum was refunded in July 2018 but again deducted from Fisher's August paycheck before being refunded a second time.

confusion surrounding a botched attempt to settle this litigation. Whatever it was, there is no evidence in the record to indicate that this second deduction and refund was a manifestation of Principal's intent to waive its right to defend this litigation. . . . Principal cannot be said to have neglected enforcement of its right "for such a length of time that the law implies its waiver or abandonment." *Rubes*, 642 N.W.2d [at] 272.

On Fisher's motion for reconsideration, the district court succinctly recapped why the waiver argument failed. Citing *Pierce*, the court stated:

Applied here, the parties did not contract for life insurance benefits that would go into effect while the insured was in a period of limited activity. In fact, the opposite is true; the provisions of the insurance contract prevented coverage from going into effect while the insured was in a period of limited activity.

We discern no error in the court's thorough analysis of the waiver issue.

Notably, the court addressed and distinguished an opinion cited by Fisher in support of a contrary conclusion. *See Mettner v. Nw. Nat'l Life Ins. Co.*, 103 N.W. 112, 114 (Iowa 1905). There, the court stated, "Receipt and retention of premiums after forfeiture [of a policy] is a waiver thereof." *Id.* The *Mettner* court found that an insurance company offered "no excuse for the retention of" premiums; and the plaintiff had a "right to assume [the company] had waived its right" to forfeit the policy. *Id.* Although *Mettner* supports Fisher's waiver argument, we agree with the district court that "more recent case law" holds policy defenses will not be waived where premiums are retained during a period of litigation. *See Rubes*, 642 N.W.2d at 272. As for another opinion cited by Fisher in the district court—*Viele v. Germania Insurance Co.*, 26 Iowa 9, 23 (1868)—the supreme court there held "the evidence does not establish such a state of facts as amounts to a waiver of the forfeiture, or an estoppel on the company, or a reinstatement, renewal or revival of the policy."

We are left with *McDonald v. Equitable Life Assurance Society*, 169 N.W. 352 (Iowa 1918), an opinion Fisher cites for the proposition that an unreasonable delay in refunding a premium will result in waiver of the right to deny coverage based on a policy condition. There, the court stated, "[I]f the company so acts in the premises that the insured as an ordinarily reasonable person is led to believe that it waives the condition or waives the forfeiture, the courts will be prompt to declare the waiver effectual." *McDonald*, 169 N.W. at 355. The court stated a jury reasonably could have found that an agent of the insurer gave an insured more time to send in a premium payment. *Id.* at 357. Based on that finding, the court reversed a directed verdict in favor of the insurance company. *Id.*

In this case, Principal did not waive its right to rely on the "period of limited activity" provision. Principal cited the provision from the outset. We conclude the district court did not err in granting Principal's summary judgment motion on the waiver claim.

## IV.  *Bad Faith*

"To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 794 (Iowa 1988). As discussed, Principal relied on the unambiguous language of the dependent life insurance provision and its incorporation of the "period of limited activity" requirement. Fisher failed to establish that the company's reliance on that provision was unreasonable as a

matter of law. We conclude the district court did not err in granting summary judgment on the bad faith claim.

**AFFIRMED.**